# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

PURCHASING POWER, LLC,

                Plaintiff,

v.

BLUESTEM BRANDS, INC.,

                Defendant.

1:12-cv-00258-WSD

## OPINION AND ORDER

This matter is before the Court on (1) Defendant Bluestem Brands, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) or, in the Alternative, Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) [11] ("Rule 12(b)(2)/Transfer Motion"); and (2) Defendant Bluestem Brands, Inc.'s Motion to Dismiss Counts IV and V Pursuant to Fed. R. Civ. P. 12(b)(6) or, in the Alternative, Motion to Dismiss Pursuant to Fed. R. Civ. P. 9(b) [12] ("Rule 12(b)(6)/Rule 9(b) Motion").

## I.    BACKGROUND

### A.    Procedural Background

Plaintiff Purchasing Power, LLC ("PPL") initiated this action in the Superior Court of Fulton County, Georgia on December 21, 2011.  In a seven-count

Complaint, PPL essentially asserts four (4) claims for: violation of the Georgia Trade Secrets Act (Count I), breach of contract (Count II), fraud (Count IV), and negligent misrepresentation (Count V) against Defendant Bluestem Brands, Inc. ("Bluestem").[1] PPL also filed an Emergency Motion for Preliminary Injunction with the Complaint.[2]

On January 25, 2012, Bluestem removed the action to this Court on the basis of diversity of citizenship. On February 1, 2012, Bluestem filed its Rule 12(b)(6)/Rule 9(b) and Rule 12(b)(2)/Transfer Motions.

In its Rule 12(b)(6)/Rule 9(b) Motion, Bluestem asserts that PPL failed to state or adequately plead claims for fraud or negligent misrepresentation and, therefore, moves the Court to dismiss Counts IV and V of the Complaint. In support of the motion, Bluestem submitted two declarations of its chairman and CEO Brian Smith ("Smith") to refute various of PPL's factual allegations. In opposition to the motion, PPL submitted the declarations of its former CEO

---

[1] PPL also asserts "counts" alleging: "Request for Preliminary and Permanent Injunction" (Count III), "Punitive Damages" (Count VI), and "Attorney's Fees" (Count VII).

[2] PPL's counsel has advised the Court that PPL is not pursuing preliminary injunctive relief in this Court, and the Court deems this motion withdrawn.

D. Keith Calhoun ("Calhoun"), its current CEO Richard Carrano ("Carrano"), and its CFO Chad Delp ("Delp") to establish facts not expressly alleged the Complaint.

In the Rule 12(b)(2)/Transfer Motion, Bluestem seeks dismissal on the ground that, if the Court grants the Rule 12(b)(6)/Rule 9(b) Motion, then the only remaining causes of action would arise out of conduct that is insufficient to confer personal jurisdiction over Bluestem in this Court. Alternatively, and notwithstanding this Court's personal jurisdiction, Bluestem seeks the transfer of the case to the United States District Court for the District of Minnesota. In support of the motion, Bluestem relies on Smith's declarations. In opposition to the motion, PPL relies on Calhoun's, Carrano's, and Delp's declarations.

B.    Relevant Factual Allegations in the Complaint

As alleged in the Complaint, PPL is the provider of a benefit program employers may offer to employees (the "PPL Program"). (Compl. ¶ 5.) Under the PPL Program, employees may purchase "high ticket retail items," such as appliances, computers, and furniture, on credit that is repaid by payroll deduction. (Id.) PPL created the PPL Program over the course of at least ten years and was the first company to provide such a product. (Id. ¶ 6.)

In or around September 2010, PPL and Bluestem entered into negotiations for Bluestem to acquire or invest in PPL. (Id. ¶ 7.) Bluestem was interested in PPL specifically because of PPL's unique business model and product lines. (Id.)

In connection with the negotiations, PPL and Bluestem entered into a Mutual Non-Disclosure Agreement ("NDA"). (Id. ¶ 8.) Under the NDA, the parties agreed to the parameters of their exchange of confidential business information, as defined in the NDA. (See id. ¶¶ 11–20.) They agreed, among other things, not to use any confidential information for "any purpose other than the purpose for which it was originally disclosed, or for any purposes which could be deemed to be adverse to or competitive with" the disclosing party. (Id. ¶ 12; id. Ex. A ¶ 4.) They further agreed to allow the disclosing party to review the "operations and procedures" of the receiving party "to ensure compliance" with the NDA. (Compl. ¶ 14; id. Ex. A ¶ 6.)

During the course of the negotiations, and pursuant to the NDA, PPL provided Bluestem with a "variety of confidential information" relating to PPL's "business operations and processes, financial plans, financial data, formulae, client information, product plans, underwriting models and marketing strategies." (Compl. ¶ 10.) During the negotiations, Bluestem's officers represented to PPL that Bluestem "had never heard, and was completely unaware, of [PPL]'s unique

business model prior to learning about and entering into negotiations with" PPL. (Id. ¶ 9.) Bluestem did not represent or otherwise indicate to PPL that Bluestem had created or developed, or was considering creating or developing, a voluntary benefit program similar to the employee purchase programs developed and provided by PPL. (Id.)

The negotiations were ultimately unsuccessful. On January 5, 2011, PPL's CEO notified Bluestem in writing that the negotiations were terminated and requested that all confidential information disclosed to Bluestem be returned or destroyed pursuant to the NDA. (Id. ¶ 21.) On February 23, 2011, Bluestem's general counsel responded to the request by returning what she described as the "hard copy materials" containing confidential information and stating that the "soft copy materials" had been deleted. (Id. ¶ 22.)

On September 29, 2011, PPL learned that Bluestem had contacted certain of PPL's clients to advise them of the upcoming launch of Bluestem's new product called "PayCheck Direct." (Id. ¶ 23.) PPL alleges that Bluestem's new PayCheck Direct program appears to be identical to the voluntary benefit programs that were created and developed by PPL. (Id. ¶ 25.)

On November 7, 2011, PPL notified Bluestem of its intention to exercise its right under the NDA to review Bluestem's procedures regarding use of PPL's

confidential information, including any use in relation to PayCheck Direct. (Id. ¶ 26.) On November 16, 2011, Bluestem's general counsel responded and stated that "Bluestem was prior to its initial contact with [PPL] already engaged in internal planning to design, create and launch an employer sponsored program enabling employee purchases of high ticket items, an effort known within Bluestem as 'Project Cortes.'" (Id. ¶ 27; id. Ex. C.) Bluestem refused to allow PPL to review Bluestem's procedures. (Compl. ¶ 27.)

Bluestem's letter of November 16, 2011, was the first time that PPL learned of "Project Cortes" or any effort by Bluestem to develop its own employee purchasing product. (Id. ¶ 28.) PPL asserts that "it now appears that [Bluestem] misrepresented and omitted numerous facts" to PPL. (Id. ¶ 52.) For example, during the negotiations between the parties, Bluestem never indicated that it was in the process of developing a competitive product. (Id. ¶ 53.) PPL asserts also that Bluestem's officers represented, on numerous occasions, that Bluestem did not offer such a product and that Bluestem was interested in PPL because of its unique product. (Id.)

PPL alleges, among other things, that Bluestem's "misrepresentations and omissions were intended to, and did, deceive [PPL] into agreeing to share" confidential information and that Bluestem's "intentional misrepresentations and

omissions upon which [PPL] reasonably relied have actually and proximately caused . . . [PPL] to sustain substantial damages." (Id. ¶¶ 55–56.)

C.    Additional Factual Allegations Contained in Declarations

1.    *Smith's Declarations Submitted by Bluestem*

The declarations of Bluestem's CEO Smith establish that Bluestem is a Delaware corporation having its principal place of business in Eden Prairie, Minnesota. Bluestem does not have an office, employees, or real property in Georgia, and it is not authorized to transact business in Georgia.

Smith's declarations assert that Bluestem was first made aware of PPL through Michael Krupka ("Krupka"), a contact at a third-party private equity firm, on June 28, 2010. Krupka stated that PPL was seeking investors or purchasers, and he suggested that Bluestem might be interested. After reviewing information received from Krupka, Bluestem expressed interest in PPL's business, and, on July 19, 2010, Paul Zurlo ("Zurlo"), Krupka's co-worker, made an "email introduction" of Bluestem's Smith, in Minnesota, to PPL's Calhoun, in Georgia.

Smith and Calhoun communicated by phone and email from late July through August 2010 and ultimately decided to pursue a potential investment or partnership. On September 1, 2010, Bluestem and PPL entered into the NDA.

Smith executed the agreement in Minnesota on behalf of Bluestem. Thereafter, the parties continued to communicate by phone and email.

On October 26, 2010, PPL's executive team met with Bluestem's executive team at Bluestem's headquarters in Minnesota. At that meeting, PPL officers shared various information with Bluestem. Later, PPL sent "jump drives" containing additional information to Bluestem in Minnesota.

On November 2, 2010, Bluestem's executive team traveled to PPL's headquarters in Georgia for a meeting at which PPL made a presentation to the Bluestem executives.

Over the next six weeks, Bluestem conducted its due diligence into PPL. On December 16, 2010, Bluestem and PPL executives met in Little Rock, Arkansas, at the office of PPL's investment banker and majority shareholder. At the meeting, Bluestem presented an offer to acquire PPL. In January 2011, PPL rejected Bluestem's offer, and the companies did not engage in further negotiations.

By May 2011, Bluestem developed and announced its PayCheck Direct program, an employer-sponsored benefit program allowing for the purchase of "larger ticket" items by payroll deduction. Bluestem had "contemplated various related marketing ideas for several years," but it began in July 2010 working on a "high ticket strategy," which ultimately led to PayCheck Direct. PayCheck Direct

was developed entirely in Minnesota by numerous Bluestem employees, all of whom reside in Minnesota.

Smith's declarations assert that third-parties with knowledge of the facts relating to this lawsuit include individuals residing in Massachusetts, Arkansas, and Minnesota.

2. *Calhoun's, Carrano's, and Delp's Declarations Submitted by PPL*

The declarations of PPL's executives Calhoun, Carrano, and Delp show that Zurlo made an "unsolicited" email introduction of Calhoun and Smith on July 19, 2010. The next day, Smith emailed Calhoun directly to express Bluestem's interest in PPL.

The parties continued to communicate by phone and email, and on August 11, 2010, Calhoun told Smith that PPL would not be able to proceed with discussions without a non-disclosure agreement. In response, Bluestem's general counsel drafted the NDA. Calhoun signed the NDA in Georgia on behalf of PPL on September 7, 2010 and returned it by email to Bluestem's general counsel.

On October 26, 2010, PPL's executives visited Bluestem in Minnesota. From November 1 to 2, 2010, Bluestem's executives visited PPL in Georgia. At the Georgia meeting, PPL disclosed, in detail, confidential business information.

After the meeting, Bluestem requested additional information, and PPL provided it by mail.

The declarations show that Bluestem representatives stated, on several occasions, that Bluestem was unaware of PPL's business model and had never considered a program like PPL's. The declarations show the dates, locations, and speakers of the statements.

## II.     RULE 12(b)(6)/RULE 9(b) MOTION

### A.     Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "assume that the factual allegations in the complaint are true and give the plaintiff[] the benefit of reasonable factual inferences." Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010), cert. denied, 132 S. Ct. 245 (2011). Although reasonable inferences are made in the plaintiff's favor, "'unwarranted deductions of fact' are not admitted as true." Aldana v. Del Monte Fresh Produce, N.A., 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting S. Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (1996)). Similarly, the Court is not required to accept conclusory allegations and legal conclusions as true. See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283,

1290 (11th Cir. 2010) (construing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009); <u>Bell Atl.</u> <u>Corp. v. Twombly</u>, 550 U.S. 544 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 570)). Mere "labels and conclusions" are insufficient. <u>Twombly</u>, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556). This requires more than the "mere possibility of misconduct." <u>Am. Dental</u>, 605 F.3d at 1290 (quoting <u>Iqbal</u>, 556 U.S. at 679). The well-pled allegations must "nudge[] their claims across the line from conceivable to plausible." <u>Id.</u> at 1289 (quoting <u>Twombly</u>, 550 U.S. at 570).

Rule 9(b) of the Federal Rules of Civil Procedure requires that a party alleging fraud "must state with particularity the circumstances constituting fraud." To satisfy Rule 9(b), the complaint must set forth "(1) precisely what . . . representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which

they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." Garfield v. NDC Health Corp., 466 F.3d 1255, 1262 (11th Cir. 2006) (quoting Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001)). "This means the who, what, when, where, and how . . . ." Id. (quoting Gross v. Medaphis Corp., 977 F. Supp. 1463, 1470 (N.D. Ga. 1997)). Conditions of a person's mind, however, such as intent and knowledge, "may be alleged generally." Fed. R. Civ. P. 9(b).

B.    Analysis

Under Georgia law, fraud has five elements: (1) a false representation by the defendant; (2) scienter; (3) intention to induce reliance by the plaintiff; (4) justifiable reliance by the plaintiff; and (5) damages. Home Depot U.S.A., Inc. v. Wabash Nat'l Corp., 724 S.E.2d 53, 60 (Ga. Ct. App. 2012). Negligent misrepresentation has three elements: (1) the negligent supply of false information by the defendant; (2) reasonable reliance by the plaintiff; and (3) damages. Id.

In this case, Bluestem asserts that PPL's claim for fraud fails because the Complaint does not allege scienter. Bluestem asserts that PPL's claim for negligent misrepresentation fails because the Complaint does not allege reasonable reliance.

Bluestem asserts further that PPL's fraud and negligent misrepresentation claims fail because the Complaint fails to meet the particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure because the Complaint fails to allege a false representation or the provision of false information. First, Bluestem argues that the Complaint's allegation of an omission by Bluestem (i.e., that Bluestem failed to disclose its "Project Cortes") does not constitute a false representation, for purposes of the fraud claim, because Bluestem did not have a legal obligation to disclose this information. Second, Bluestem argues that the Complaint does not expressly allege an affirmative false representation or the communication or provision of false information, for purposes of the fraud and negligent misrepresentation claims, required by Rule 9(b).

1.  *Scienter*

"Scienter," in the context of fraud, means "that the false statement was knowingly made with false design." Farmer's State Bank v. Huguenin, 469 S.E.2d 34, 37 (Ga. Ct. App. 1996) (quoting Ideal Pool Corp. v. Baker, 377 S.E.2d 511, 513 (Ga. Ct. App. 1988)). To plead scienter, the plaintiff must allege that the defendant had actual knowledge of the alleged falsity. See WESI, LLC v. Compass Envtl., Inc., 509 F. Supp. 2d 1353, 1358–59 (N.D. Ga. 2007) (citing Hertz Corp. v. Cox, 430 F.2d 1365, 1375 (5th Cir. 1970)). An allegation that the

defendant "knew *or should have known*" of the falsity is insufficient.  Id. (emphasis added).

Bluestem argues that the Complaint "makes no attempt to allege facts showing knowledge of false statement."  The Court disagrees.  The Complaint expressly characterizes Bluestem's alleged misrepresentations as "intentional."  An intentional falsity is a knowing falsity.  See Kennedy v. Tallant, 710 F.2d 711, 720 (11th Cir. 1983) (holding that evidence of "intentional" misconduct was evidence of "knowing misconduct" so as to establish scienter in a statutory fraud claim).  The Court finds that PPL's Complaint alleges scienter.

### 2.  *Reasonable Reliance*

Bluestem next argues that the Complaint "fails to adequately allege that [PPL] reasonably relied on any alleged false information" for purposes of the negligent misrepresentation claim.  The Complaint states, "Plaintiff reasonably and justifiably relied upon Defendant's misrepresentations and omissions . . . ."  Bluestem does not explain how this allegation is deficient or otherwise fails to allege reasonable reliance.  The Court finds that the Complaint alleges reasonable reliance.

### 3. *False Representation by Omission*

Georgia law recognizes that the omission of a fact may form the basis of a fraud if the omitting party is under an obligation to communicate the fact. Ga. Code Ann. § 23-2-53 (1982). "The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." Id. Bluestem argues that it was not obliged to disclose information to PPL. PPL contends that Bluestem was obligated to disclose its "Project Cortes" because of the "particular circumstances" of this case.

The "particular circumstances" impose a disclosure obligation in "any case where a person intentionally concealed a fact from a certain other person, hoping thereby to derive a benefit, and knowing that only by silence and by concealing the truth would the anticipated benefit accrue." Reeves v. B.T. Williams & Co., 127 S.E. 293, 295 (Ga. 1925); accord Miller v. Lomax, 596 S.E.2d 232, 239 (Ga. Ct. App. 2004). To state a *prima facie* case of an obligation to disclose under the "particular circumstances," therefore, a plaintiff must allege two factors: (1) the intentional concealment of a fact (2) for the purpose of obtaining an advantage or a benefit. See Ga. Real Estate Comm'n v. Brown, 262 S.E.2d 596, 597 (Ga. Ct. App. 1979) (citing Reeves, 127 S.E. at 295).

The Complaint in this case, viewed in the light most favorable to PPL, alleges that Bluestem intentionally concealed "Project Cortes" for the purpose of deceiving PPL into agreeing to share its trade secrets and confidential business information.  (See Compl. ¶¶ 52–53, 55.)  These allegations suffice to state a *prima facie* claim that Bluestem had an obligation to disclose "Project Cortes" under the "particular circumstances" of the case.  See id.; see also Williams v. Dresser Indus., Inc., 120 F.3d 1163, 1171 (11th Cir. 1997) (recognizing that the district court correctly denied a motion to dismiss a fraud-by-omission claim based on "particular circumstances" where the complaint alleged that the defendant intentionally withheld information so that the plaintiff would proceed under a false assumption).  The Court concludes that Bluestem's alleged failure to disclose "Project Cortes" is an alleged false representation for the purpose of PPL's fraud claim.

4.    *Affirmative False Representation or False Information*

Bluestem argues that PPL does not allege an affirmative false representation, for the purpose of PPL's fraud claim, or an affirmative supply of false information, for the purpose of PPL's negligent misrepresentation claim.  The Complaint alleges that Bluestem "misrepresented . . . numerous facts" (Compl. ¶ 52) and "supplied false information to [PPL]" (id. ¶ 58.)  It cites as an "example"

Bluestem's representation "on numerous occasions that Defendant did not offer any similar programs and/or product lines [to the PPL Program], and that Defendant was specifically interested in acquiring and/or investing in Plaintiff because of its unique product lines and voluntary benefit programs."  (Id. ¶ 53; accord id. ¶ 59.)  The Court concludes that PPL does allege an affirmative false representation for the purpose of its fraud claim and an affirmative supply of false information for the purpose of its negligent misrepresentation claim.[3]

Bluestem argues further that PPL's averment of Bluestem's false representation and supply of false information does not satisfy the particularity requirement of Rule 9(b).[4]  The Court agrees.

---

[3] Relying on Smith's declaration, Bluestem also argues that the statement is substantively not false.  On a motion to dismiss under Rule 12(b)(6), however, the Court must assume that the allegations in the complaint are true and cannot consider matters outside of the complaint.  See, e.g., Harper v. Lawrence County, 592 F.3d 1227, 1232 (11th Cir. 2010).  If PPL's allegations are not alleged in good faith, other remedies may be available to Bluestem.

[4] Bluestem contends that a claim for negligent misrepresentation is subject to the heightened pleading requirements of Rule 9(b).  The Eleventh Circuit has not passed on this question, and the district courts within our Circuit have reached different conclusions.  See Atwater v. Nat'l Football League Players Ass'n, No. 1:06-CV-1510-JEC, 2007 WL 1020848, at *13 (N.D. Ga. Mar. 29, 2007) (collecting cases).  PPL does not dispute Bluestem's contention.  Accordingly, for purposes of the Rule 12(b)(6)/Rule 9(b) Motion, the Court assumes that a claim for negligent misrepresentation must be pleaded in conformity with Rule 9(b).

Although the Complaint describes an *example* of a false representation, it does not identify others. The example given is insufficiently alleged because PPL fails to allege who made the representation or when or where it was made.[5] Cf. Garfield, 466 F.3d 1255, 1262 (11th Cir. 2006) ("[Particularity] means the who, what, when, where, and how . . . ." (quoting Gross, 977 F. Supp. at 1470)). Accordingly, the Court finds that Counts IV and V of the Complaint must be dismissed for failure to comply with the pleading requirements of Rule 9(b).

In PPL's response to the Rule 12(b)(6)/Rule 9(b) Motion, it requests leave to amend its Complaint to correct any pleading deficiencies. The Court normally grants a plaintiff the opportunity to amend before dismissing claims in a complaint for pleading defects. Accordingly, the Court grants PPL the opportunity to file an amended complaint within twenty (20) days of this Order to address the pleading shortcomings identified.

---

[5] Citing Advanced Technology Services, Inc. v. KM Docs, LLC, No. 1:11-CV-3121, 2011 WL 5870545 (N.D. Ga. Nov. 21, 2011), PPL asserts that Calhoun's, Carrano's, and Delp's declarations, which are outside of the Complaint, may be considered to satisfy the requirements of Rule 9(b). PPL's reliance on Advanced Technology, however, is misplaced. In Advanced Technology, the court considered an affidavit that had been attached to the complaint and not evidence outside of the pleading. See 2011 WL 5870545, at *3.

## III.    RULE 12(b)(2)/TRANSFER MOTION

In the Rule 12(b)(2)/Transfer Motion, Bluestem seeks dismissal for lack of personal jurisdiction.  Bluestem alternatively requests that the case be transferred to the United States District Court for the District of Minnesota pursuant to 28 U.S.C. § 1404(a).

The motion to dismiss and the motion to transfer are based on the fraud and negligent misrepresentation counts in the Complaint (Counts IV and V) being dismissed pursuant to the Rule 12(b)(6)/Rule 9(b) Motion.  If Counts IV and V are dismissed, as Bluestem contends they should be, Bluestem argues that PPL's remaining causes of action, for trade secret misappropriation and breach of contract, all are based on alleged conduct that occurred outside of Georgia.  The out-of-Georgia contacts, Bluestem claims, are insufficient to subject it to personal jurisdiction in Georgia.  Furthermore, because these remaining causes of action arose in Minnesota and are governed by Minnesota law, and because the majority of witnesses and documentary evidence relevant to the remaining causes of action are located in Minnesota, Bluestem argues that transfer to the District Court in Minnesota is required.

The Court has found that PPL's fraudulent omission claim is adequately asserted. This claim is based on conduct alleged to have occurred in Georgia.[6] Specifically, PPL alleges that Bluestem's executives traveled to Georgia, where they induced Bluestem to share confidential information by intentionally concealing "Project Cortes" from PPL.

A.   Personal Jurisdiction

A district court has personal jurisdiction over a non-resident defendant if the exercise of jurisdiction (1) is appropriate under the state long-arm statute and (2) does not violate the Due Process Clause of the Fourteenth Amendment. Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1257–58 (11th Cir. 2010). To satisfy the constitutional requirement, the defendant must have "fair warning" of litigation in the state by establishing "minimum contacts" with the state. Id. If such "minimum contacts" are shown, the defendant can escape jurisdiction only by making "a 'compelling case' that the exercise of

---

[6] The Court has granted PPL leave to re-plead the fraudulent misrepresentation and negligent misrepresentation claims sought to be asserted in an effort to satisfy the Rule 9(b) pleading particularity requirement. If PPL is able to file an amended complaint that satisfies Rule 9(b), it appears that this case will include further claims based on conduct that occurred in Georgia, which would be governed by Georgia law.

jurisdiction would violate traditional notions of fair play and substantial justice."
Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).

PPL's fraudulent omission allegation, if true, confers personal jurisdiction over Bluestem on the Court under Georgia's long-arm statute. See Ga. Code Ann. § 9-10-91(2) (Supp. 2011) (conferring jurisdiction over a defendant who "[c]ommits a tortious act or omission in this state"); see also Cartwright v. Fuji Photo Film U.S.A., Inc., 720 S.E.2d 200, 207 (Ga. Ct. App. 2011) (holding that Georgia's long-arm statute confers jurisdiction over a non-resident when the complaint alleges tortious conduct by the non-resident in Georgia).

The exercise of jurisdiction by the Court does not violate the Due Process Clause of the Fourteenth Amendment because, on the facts alleged, Bluestem had "fair warning" of Georgia litigation based on sufficient "minimum contacts" with the state. See Diamond Crystal, 593 F.3d at 1267. Bluestem had sufficient "minimum contacts" with Georgia because, as alleged, PPL's fraud claim arises from Bluestem's executives' conduct committed in Georgia and aimed at PPL, a Georgia company. See id. ("[T]he 'fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities.'" (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472–73

(1985) (second alteration in original)); <u>Delong Equip. Co. v. Wash. Mills Abrasive Co.</u>, 840 F.2d 843, 854 (11th Cir. 1988) ("[A]lthough the minimum due process requirements do not necessitate that a defendant must have physical contact with the forum, such a 'territorial presence frequently will enhance a potential defendant's affiliation with a state and reinforce the reasonable foreseeability of suit there.'" (quoting <u>Burger King</u>, 471 U.S. at 476)).[7] The Court concludes that it has personal jurisdiction over Bluestem.

B.    <u>Transfer</u>

A district court may transfer a civil action to another district, where the case could have been brought originally, "[f]or the convenience of parties and witnesses, in the interest of justice . . . ."  28 U.S.C.A. § 1404(a) (West Supp. 2012).  The Court generally considers nine factors in determining whether to transfer a case: (1) convenience of the witnesses; (2) location of relevant documents and relative ease of access to sources of proof; (3) convenience of the

_____

[7] The showing of "minimum contacts" satisfies the constitutional element in this case because Bluestem, whose jurisdictional argument is based solely on PPL's fraud claim being dismissed, has not presented a "compelling case" that, with the inclusion of the fraud claim, the Court's exercise of jurisdiction would offend the "traditional notions of fair play and substantial justice."  <u>See</u> <u>Diamond Crystal</u>, 593 F.3d at 1274 (finding the Due Process requirement satisfied by "minimum contacts" alone because the defendant did not present "the requisite 'compelling case' that exercising jurisdiction would be unconstitutionally unfair").

parties; (4) locus of operative facts; (5) availability of process to compel attendance of unwilling witnesses; (6) relative means of the parties; (7) a forum's familiarity with the governing law; (8) weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice. Manuel v. Convergys Corp., 430 F.3d 1132, 1135 & n.1 (11th Cir. 2005).

Based only PPL's breach of contract and trade secret misappropriation claims, Bluestem argues that the first, second, fourth, and seventh factors favor transfer.[8] The Court is not able to fully evaluate the factors set out in Manuel, however, because PPL may file an amended complaint. The Court, therefore, denies the motion to transfer without prejudice to re-file after PPL files an amended complaint, or the time for PPL to do so has expired.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Bluestem's Motion to Dismiss Counts IV and V Pursuant to Fed. R. Civ. P. 12(b)(6) or, in the Alternative, Motion to Dismiss Pursuant to Fed. R. Civ. P. 9(b) [12] is **GRANTED IN PART** and **DENIED IN PART**.  Counts IV and V of PPL's Complaint are **DISMISSED**

---

[8] Bluestem concedes that the third, fifth, sixth, and eighth factors do not favor transfer.

**WITHOUT PREJUDICE**.  PPL may file an amended complaint within twenty (20) days of entry of this Order.

      **IT IS FURTHER ORDERED** that Bluestem's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) or, in the Alternative, Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) [11] is **DENIED WITHOUT PREJUDICE** to re-file a motion to transfer venue within fourteen (14) days after PPL files an amended complaint or, if PPL does not file an amended complaint, fourteen days (14) after the time for PPL to do so, as set out in this Order, has passed.

      **SO ORDERED** this 27th day of July, 2012.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE