IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PURCHASING POWER, LLC,

                              Plaintiff,

        v.                                                    1:12-cv-258-WSD

BLUESTEM BRANDS, INC.,

                              Defendant.

## OPINION AND ORDER

This matter is before the Court on remand [167] ("Remand Order") from the
Eleventh Circuit Court of Appeals "for the limited purpose of making a factual
determination as to whether diversity jurisdiction exists in this case and to permit
further proceedings to address jurisdictional deficiencies, as deemed necessary by
the district court."  (Remand Order at 1).  In its Remand Order, the Eleventh Court
noted: "The notice of removal did not adequately allege the citizenship of
Purchasing Power, LLC, and the responses to [the Eleventh Court's] jurisdictional
question indicated that a remand is necessary."  Id.  The Eleventh Court asks this
Court to determine whether any of Plaintiff Purchasing Power, LLC's ("Plaintiff")
members are citizens of Minnesota or Delaware.  The Court concludes, for the
reasons explained in this Order, that diversity jurisdiction does not exist in this

case, because one of the members of Purchasing Power Holdings, LLC -- the sole member of Plaintiff -- is determined for the purpose of diversity jurisdiction to be a Delaware citizen.

## I.    BACKGROUND

This is an acrimonious and inefficiently litigated commercial dispute between companies that compete in the business of "payroll deduction" sales, or the sale of goods to employees by allowing deductions from employees' pay. Plaintiff alleges that Defendant Bluestem Brands, Inc. ("Defendant," together, "Parties") misappropriated Plaintiff's trade secrets, violated provisions of a confidentiality agreement between the Parties, and engaged in fraud.

On December 21, 2011, Plaintiff filed this action against Defendant in the Superior Court of Fulton County, Georgia.  On January 25, 2012, Defendant filed its Notice of Removal [1] ("Notice"), removing the action to this Court on the basis of diversity jurisdiction.  Defendant stated it was "a Delaware corporation with its principal place of business in Eden Prairie, Minnesota, and thus a citizen of Delaware and Minnesota."  (Notice at 2).  Defendant stated also that Plaintiff, "a Georgia limited liability company, has no members that are citizens of either Minnesota or Delaware."  (Id., citing Exhibit B to the Notice [1-3]).  Exhibit B to the Notice is an e-mail dated January 20, 2012, from Mr. Joe Letzer -- counsel for

Plaintiff -- to Mr. Randall Kahnke -- counsel for Defendant – in which Mr. Letzer states:

> we are informed by our client that none of the members of the LLC are resident citizens of either the states of Minnesota or Delaware. We trust this gives you the essential information you requested to assess removability on diversity grounds.

([1-3] at 2) (the "January 20, 2012, Email").  Thus, Plaintiff undertook to provide the information it and its counsel knew was necessary to invoke this Court's subject matter jurisdiction.

In addition to Plaintiff's representations to the Defendant regarding jurisdiction, counsel for Plaintiff represented to the Court on four separate occasions that the Court had jurisdiction over this case.  On March 2, 2012, in the Joint Preliminary Report and Discovery Plan [19], Plaintiff represented that there was no question regarding the Court's jurisdiction. (Joint Preliminary Report and Discovery Plan at 15).  On August 16, 2012, Plaintiff filed its Amended Complaint [39], in which Plaintiff alleged that the "Court has subject matter jurisdiction over the claims at issue in this action."  (Amended Complaint ¶ 3).  On October 5, 2012, Plaintiff filed its Motion for Leave to File Second Amended Complaint [49].  Plaintiff's Proposed Second Amended Complaint [49-1] expressly alleged that the "Court has original subject matter jurisdiction over the claims in this action

pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds the $75,000 statutory minimum, exclusive of interest and costs." (Proposed Second Amended Complaint ¶ 4). On January 18, 2013, Plaintiff filed its Motion for Leave to File Revised Second Amended Complaint [66]. Plaintiff's Revised Second Amended Complaint [66-1] again expressly alleged that the "Court has subject matter jurisdiction over the claims at issue in this action." (Revised Second Amended Complaint ¶ 3).[1]

This case was contentious and the litigation tactics employed were often troubling. The time required to manage this litigation involved substantial and often unnecessary expenditure of judicial resources. Judicial activities included considering motions filed by the Parties and the review of hundreds of documents filed, without justification, under seal. On May 9, 2014, the Court granted [158] summary judgment in favor of Defendant on the claims that remained in the case, and the case was concluded.

On June 6, 2014, Plaintiff appealed [160]. On June 27, 2014, the Eleventh Circuit docketed its "Jurisdictional Question," noting that the pleadings did not sufficiently allege Plaintiff's citizenship, and asked the Parties if the record

---

[1]    All four of these documents were filed by Plaintiff's counsel, Burr & Forman LLP, on behalf of Plaintiff.

adequately proved Plaintiff's citizenship or if a formal amendment to the pleadings was necessary.

On July 11, 2014, Defendant filed its Response to the Jurisdictional Question ("Defendant's Response"), citing the January 20, 2012, Email. (Defendant's Response at 3). In its response, Defendant stated that it had requested in 2012 the production of documents from Plaintiff concerning Plaintiff's members and their citizenship, and that Plaintiff had objected to producing these documents on the basis of relevancy. (Id. at 4-5). The response noted further that on November 12, 2012, counsel for Defendant sent counsel for Plaintiff a letter regarding Plaintiff's objections to producing the documents, noting that the documents were relevant "because they relate to jurisdiction . . . ." (Id. at 5). Aware that Defendant wanted to investigate federal jurisdiction, on November 19, 2012, counsel for Plaintiff responded by referencing the January 20, 2012, Email, noting that they had identified the citizenship and residence information requested by Defendant, that counsel for Plaintiff had provided the information necessary to determine the existence of federal subject matter jurisdiction and, for those reasons, reiterated their objection to these document requests. (Id.). Based on this case history, Defendant stated in its response that it lacked access to information that would identify Plaintiff's

members and their respective citizenships, and that the record does not contain this information.

On July 11, 2014, Plaintiff filed its Response to the Jurisdictional Question ("Plaintiff's Response"), now stating, almost two and a half years after Mr. Letzer's January 20, 2012, Email, and after all of Plaintiff's claims had been dismissed, that the evidence showed that the Court lacks jurisdiction over this case. (Plaintiff's Response at 1).  Plaintiff argued in its response that the Notice failed to allege Plaintiff's members and their respective citizenships.  (Id. at 8-9). Disturbingly, this representation was made despite the fact that Plaintiff had given its assurances to Defendant and the Court that there was diversity between the Parties; representations upon which Plaintiff knew the Defendant and the Court relied.  Plaintiff did not reference the January 20, 2012, Email, where counsel for Plaintiff informed counsel for Defendant that none of Plaintiff's members are citizens of either the states of Minnesota or Delaware, in Plaintiff's Response. Plaintiff stated also that the record showed that one of Plaintiff's members, FSP III Kendrick Purchasing Power Holdings, Inc. ("FSP III"), is a citizen of Delaware, and that complete diversity does not exist and did not exist when this case was removed, information it did not previously disclose.  (Id. at 10-11).

On July 14, 2014, the Parties filed their Joint Motion for Remand, requesting

that the Eleventh Circuit remand this case to the Court so the Parties could

supplement the record and the Court could make appropriate findings regarding its

jurisdiction.  On August 4, 2014, the Eleventh Circuit entered its Remand Order,

remanding the case to the Court "for the limited purpose of making a factual

determination as to whether diversity jurisdiction exists in this case and to permit

further proceedings to address jurisdictional deficiencies, as deemed necessary by

the district court."  (Remand Order at 1).

On August 20, 2014, the Court held an evidentiary hearing for the Parties to

present evidence of Plaintiff's citizenship at the time of removal (the

"August 20, 2014, Hearing").  At the August 20, 2014, Hearing, Mr. Richard

Alfred Carrano, II ("Carrano"), the President and Chief Executive Officer of

Plaintiff since October 14, 2011, testified that Mr. Letzer forwarded the

January 20, 2012, Email[2] to him, and that in response he prepared a list of

Plaintiff's members with the states of residence for those members (the "Member

List").[3]  (Transcript of August 20, 2014, Hearing at 8-9).  The Member List

contained the names of nine (9) individuals who were all listed as residents of

Georgia, and three limited liability companies: 1) Purchasing Power Investors,

---

[2]     The January 20, 2012, Email was marked as Plaintiff's Exhibit 2 at the
August 20, 2014, Hearing.

[3]     The Member List was marked as Plaintiff's Exhibit 3 at the
August 20, 2014, Hearing.

LLC; 2) , FSP III Kendrick Purchasing Power Holdings, LLC.; and 3) Stephens

Capital Partners, LLC.  The Member List stated that Purchasing Power Investors,

LLC was a resident of Michigan, that FSP III Kendrick Purchasing Power

Holdings, LLC was a resident of Massachusetts, and that Stephens Capital

Partners, LLC was a resident of Arkansas.  Carrano testified that he obtained this

information from the Unit Purchase and Recapitalization Agreement ("UPRA"),[4]

which memorialized the October 2011 sale transaction which created Plaintiff.  (Id.

at 9).

     Carrano testified that when he prepared the Member List he believed it to be

accurate.  (Id. at 11).  Carrano now states that the second listed member, FSP III

Kendrick Purchasing Power Holdings, LLC, was incorrectly identified as a limited

liability company when it is in fact a corporation -- FSP III -- incorporated in the

State of Delaware.  (Id. at 11-12).  Carrano testified that in preparing the Member

List, he looked to page 56 of the UPRA, which lists the notice addresses of each of

the member entities.  (Id. at 16).  Page 56, he states, incorrectly lists FSP III as a

limited liability company, though the UPRA in several other substantive

provisions, identifies FSP III as a corporation.  (Id.).  Carrano noted that "the

concept of residence and citizenship is a foreign one to me, and as such I interpret

---

[4]     The UPRA was marked as Plaintiff's Exhibit 4 at the August 20, 2014,
Hearing.

that to mean physical location." (Id.).  Carrano testified that he did not receive,

from Plaintiff's litigation counsel, instructions or guidance regarding what federal

jurisdiction requires or what information was needed to determine the citizenship

of Plaintiff's members, aside from the January 20, 2012, Email that was forwarded

to him.  (Id. at 22, 50-52).  Carrano also testified that he was not asked by counsel

for Plaintiff to identify the members of the limited liability members of Plaintiff,

and that he could not identify these members.  (Id. at 43-46).

Counsel for Plaintiff asked Carrano at the hearing about depositions taken by

Defendant after counsel for Plaintiff had assured them that jurisdiction existed,

noting that counsel for Defendant did not specifically ask questions about

Plaintiff's members.  (Id. at 24-27).  Counsel for Plaintiff admitted that she was

seeking to show that both Plaintiff and Defendant were on notice that FSP III was a

corporation -- despite Plaintiff's counsels' prior assurances to Defendant's counsel

and to the Court that diversity jurisdiction existed.  (Id. at 27, 30).  Counsel for

Plaintiff also asserted that they did not fail to identify the citizenship of Plaintiff's

members, but only mistakenly identified FSP III as a limited liability company

when it is a corporation.  (Id. at 34).  Carrano testified that at some point in time,

likely after the initiation of this action, the UPRA was provided to counsel for

Plaintiff.  (Id. at 70).  The UPRA, on its first page, states that FSP III is a Delaware

corporation.  (Id. at 69).  Plaintiff's counsel did not advice Defendant's counsel or the Court that this was in conflict with its prior claims that FSP III was a limited liability company.

On recross-examination, Carrano testified that the UPRA alone would not necessarily identify the members of Plaintiff.  (Id. at 76-77).  Counsel for the Defendant stated that the UPRA does not, at any point, identify FSP III as a member of Plaintiff.  (Id. at 77-78).  Mr. Greg Birge ("Birge"), general counsel of Plaintiff, informed that Court that the "cap table" was the best document to identify the members of Plaintiff at the time of the removal.  (Id. at 82).  After a substantial discussion with Birge and counsel for Plaintiff, the Court concluded that the information presented at the August 20, 2014, Hearing, was insufficient for it to conclude that FSP III was a member of Plaintiff and thus was still not able to answer the Eleventh Circuit's jurisdictional question.  (Id. at 77-94).

On September 23, 2014, the Court scheduled [179] a second evidentiary hearing for October 22, 2014 (the "October 22, 2014, Hearing"), and ordered Plaintiff to present testimony from an officer or senior manager of each of Plaintiff's members, and the members of the members of Plaintiff, which Plaintiff contended were citizens of Minnesota or Delaware.

At the October 22, 2014, Hearing, Mr. John Schnabel ("Schnabel"), who is

employed by Falcon Investment Advisors ("FIA"), a private equity investment group, testified that FIA invested in Plaintiff through FIA's "third fund," Falcon Strategic Partners III L.P. (the "Fund")  (Transcript of October 22, 2014, Hearing at 99-101).  Schnabel testified that the Fund invested in Plaintiff through a "blocker," which is a corporation that receives money from the Fund with which to invest and which also serves the function of enabling investors to avoid federal income tax consequence of their investment.  (Id. at 102-03).[5]

---

[5]     Schnabel put it this way:

> It's really just a way to make sure that we don't receive income that's ECI related.  So if we were to pull money out of the equity directly -- in other words, we would sell the underlying equity and the money would then flow into the blocker, we would then pay taxes at the blocker, therefore sanitizing it of ECI, UBIT, and then it would go up into the fund.  It wouldn't be tax efficient.  So generally what we do is sell the blocker that owns the shares to whoever is buying it.

(Id. at 104).  Schnabel testified that their fund documents are designed to protect investors from "allow[ing] ECI or UBIT to flow through the fund."

(Id.).  Schnabel testified further that:

> Because the foreign investors or a pension fund -- a pension fund, you know, a large pension fund does not pay taxes on any of its income except for unrelated business income.  So UBTI is something that they would then have to account for and then pay tax on, which they are not geared up to do.

Neither do foreign investors want to pay ECI.  They are generally not even reporting to our federal government, so therefore they don't want to have an accounting group that does that.  So essentially what they do is they just put it on us and say avoid this at all cost.

(Id. at 105).

Regarding the "blocker," Schnabel testified:

Schnabel: Well, money was sent down by the fund, and 100 percent of the blocker stock was sent back up.

The Court: And there is nothing else that the blocker does other than to take the fund's money –

Schnabel: And pass it on, yes.

The Court: So it's –

Schnabel: It's a cleansing mechanism.  It's a blocker for income.

The Court: That's an interesting term, cleansing mechanism.  Sanitize I think is another word that you have used.  So it's really just a fabrication in order to make sure that the fund doesn't have to pay the taxes on whatever profits –

Schnabel: Yeah, it's really there only to make sure that a certain type of income never hits the fund.

. . .

The Court: That the investor is really the owner that has the equity interest in Purchasing Power L.L.C., but they do that by having created this corporation for the sole purpose really of whatever tax advantage there was as the money flowed from Purchasing Power L.L.C. back to the investor; is that right?

Schnabel testified further that FSP III was the "blocker" for this investment and that the Fund is the 100% owner of FSP III, which in turn owns a partial interest in Purchasing Power Holdings, LLC, which in turns owns Plaintiff.  (Id. at 104, 109).  Schnabel testified further that FSP III is a Delaware corporation.  (Id. at 106).  Schnabel testified that the identification of FSP III as a limited liability company on page 56 of the UPRA was a mistake, and that it is a corporation.  (Id. at 113-16).

At the October 22, 2014, Hearing, Birge testified that Purchasing Power Holdings, LLC is the holding company and the 100% owner and only member of Plaintiff.  (Id. at 130, 134).  Birge testified that the owners of Purchasing Power Holdings, LLC are: 1) FSP III; 2) Purchasing Power Investors, LLC; and 3) Stephens Capital Partners, LLC, in addition to several individuals who are or were formally in management.  (Id. at 135).  Birge testified that he has reviewed the UPRA and sale transaction documents and spoke with the attorneys involved in the original sale transaction, and has confirmed that FSP III is not a limited liability company but rather a corporation, as it is identified in all the operative parts of the UPRA.  (Id. at 138-39).

---

Schnabel: That's right.

(Id. at 119-20).

## II.   DISCUSSION

### A.   Legal Standard

Diversity jurisdiction exists where the amount in controversy exceeds $75,000 and the suit is between citizens of different states.  28 U.S.C § 1332(a).  "Diversity jurisdiction, as a general rule, requires complete diversity—every plaintiff must be diverse from every defendant."  Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1564 (11th Cir. 1994).  "Citizenship for diversity purposes is determined at the time the suit is filed."  MacGinnitie v. Hobbs Grp., LLC, 420 F.3d 1234, 1239 (11th Cir. 2005).  The burden to show the jurisdictional fact of diversity of citizenship is on the party that removed this action to federal court.  See Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2001).

For the purposes of diversity jurisdiction, a corporation is deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business.  28 U.S.C. § 1332(c)(1).  A limited liability company, unlike a corporation, is a citizen of any state of which one of its members is a citizen, not of the state where the company was formed or has it principal office.  See Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C., 374 F.3d 1020, 1022 (11th Cir. 2004).  "[W]hen an entity is composed of multiple layers of constituent entities, the citizenship determination

14

requires an exploration of the citizenship of the constituent entities as far down as necessary to unravel fully the citizenship of the entity before the court." RES-GA Creekside Manor, LLC v. Star Home Builders, Inc., No. 10-cv-207, 2011 WL 6019904, at *3 (N.D. Ga. Dec. 2, 2011) (quoting Multibank 2009-1 RES-ADC Venture, LLC v. CRM Ventures, LLC, No. 10-cv-02001, 2010 WL 3632359, at *1 (D. Colo. Sept. 10, 2010)).

      B.     <u>Analysis</u>

          1.     <u>Factual Determination on Citizenship</u>

The Eleventh Court remanded this matter "for the limited purpose of making a factual determination as to whether diversity jurisdiction exists in this case and to permit further proceedings to address jurisdictional deficiencies, as deemed necessary by the district court." (Remand Order at 1). After conducting both the August 20, 2014, Hearing and the October 22, 2014, Hearing, the Court concludes that diversity jurisdiction does not exist in this case.

The evidence presented establishes that Plaintiff, a limited liability company, is 100% owned by Purchasing Power Holdings, LLC -- Plaintiff's sole member. (E.g., Transcript of October 22, 2014, Hearing at 130-34). Plaintiff's sole member is also a limited liability company, requiring the Court to determine the citizenship of its members. See RES-GA, 2011 WL 6019904, at *3. Purchasing Power

Holdings, LLC, in addition to nine (9) individuals, has three entity members:

1) FSP III; 2) Purchasing Power Investors, LLC; and 3) Stephens Capital Partners,

LLC.  Defendant is a citizen of Delaware and Minnesota, thus if any of Purchasing

Power Holdings, LLC's members are citizens of either Delaware or Minnesota,

complete diversity does not exist.  See Palmer, 22 F.3d at 1564.

The testimony and evidence presented at the hearings establishes that FSP

III was incorporated in the State of Delaware, and thus a Delaware citizen.[6]  See 28

---

[6]     The Court notes that Schnabel testified that he is an officer of FSP III but
was uncertain of who the directors are, that he was unaware whether any bylaws
for the corporation existed, and that the directors of FSP III never meet.
(Transcript of October 22, 2014, Hearing at 181-82).  Schnabel testified that
FSP III had no other function than to block certain types of income from reaching
the Fund for tax purposes, and that investors in the Fund receive documents
showing that they own an interest in Plaintiff, with the additional layered entities
and blocker removed.  (Id. at 119-21, 184).  While Schnabel's testimony suggests,
perhaps even strongly, that FSP III may be a mere alter ego of Falcon Investment
Advisors, or some other entity, created to avoid the payment of certain taxes by
investors, the Court cannot look through FSP III and disregard its state of
incorporation for diversity jurisdiction purposes.  See Fritz v. Am. Home Shield
Corp., 751 F.2d 1152, 1153 (11th Cir. 1985); see also Panalpina Welttransport
GmBh v. Geosource, Inc., 764 F.2d 352, 354 (5th Cir. 1985) ("the alter ego
doctrine cannot be used to preserve diversity jurisdiction by ignoring the place of
incorporation of the subsidiary and treating the subsidiary as if it were only a
citizen of the state of incorporation of the dominant corporation.").  Here, the
Court finds the record supports that FSP III was incorporated and registered in
Delaware.

U.S.C. § 1332(c)(1); see also, e.g., Transcript of August 20, 2014, Hearing at

107-08.  Complete diversity, therefore, does not exist.[7]

### 2.    Litigation Conduct of Plaintiff's Counsel

The Court notes that the jurisdiction conclusion stated above comes almost

three years after this case was removed to this Court, and after counsel for Plaintiff

made representations to counsel for Defendant in the form of the January 20, 2012,

Email, where Mr. Letzer stated that counsel for Plaintiff "are informed by our

client that none of the members of the LLC are resident citizens of either the states

of Minnesota or Delaware."  (January 20, 2012, Email).  It also comes after

Plaintiff made four separate representations to the Court that there was federal

diversity jurisdiction in this case, representations made despite the fact that the

UPRA, a document which created the client which counsel for Plaintiff

represents -- and which ultimately was given to Plaintiff's counsel for

review -- states on its first page that FSP III is a Delaware corporation.  To reach

its conclusion regarding jurisdiction, the Court was required to conduct two

evidentiary hearings, because counsel for Plaintiff did not provide witnesses or

documents that adequately explained who Plaintiff's members are, and instead

---

[7]    This is true even if the remaining two members, Purchasing Power Investors, LLC and Stephens Capital Partners, LLC, are not citizens of Minnesota or Delaware.

sought to focus the Court's attention on how there was simply a typographical mistake regarding whether FSP III is a corporation or a limited liability company, even though the UPRA states on its first page that it is a corporation.

The Courts notes further that counsel for Plaintiff failed to provide Carrano with any instructions regarding the information counsel needed to determine Plaintiff's citizenship. (Transcript of August 20, 2014, Hearing at 22, 50-52). This failure is particularly egregious considering it is well-established that "when an entity is composed of multiple layers of constituent entities, the citizenship determination requires an exploration of the citizenship of the constituent entities as far down as necessary to unravel fully the citizenship of the entity before the court." See RES-GA, No. 10-cv-207, 2011 WL 6019904, at *3; see also Rolling Greens, 374 F.3d at 1022. Plaintiff's counsel's attempts to frame this as a simple mistake regarding whether FSP III was a limited liability company or a corporation disguises the scope and thoroughness of its inquiry behind its diversity representations. If FSP III was a limited liability company, it would have been necessary to determine who its members were in order to determine its citizenship, not simply where it was receiving notices under the UPRA. Counsel for Plaintiff failed to inquire about the members of Purchasing Power Investors, LLC or

Stephens Capital Partners, LLC, the two actual limited liability company members on the Member List.

Rule 11 of the Federal Rules of Civil Procedure provides that attorneys who present to the Court a pleading, written motion, or other paper "certif[y] that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,. . . [the] legal contentions are warranted by existing law [and] the factual contentions have evidentiary support."  (Fed. R. Civ. P. 11(b)(2-3)).  On four separate occasions, counsel for Plaintiff filed documents with the Court stating that the Court had jurisdiction, including in its Proposed Second Amended Complaint when counsel for Plaintiff stated that the "Court has original subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds the $75,000 statutory minimum, exclusive of interest and costs."  (Proposed Second Amended Complaint ¶ 4). Based on Carrano's testimony regarding the complete lack of instructions he received in relation to determining Plaintiff's citizenship, it seems quite possible that counsel for Plaintiff made these representations about the Court's jurisdiction without conducting a reasonable inquiry.

Rule 11 provides that the district court, on its own initiative, may require a party to "show cause" why its conduct has not violated Rule 11(b).  Fed. R. Civ. P. 11(c)(3).  Imposing sanctions pursuant to Rule 11 is committed to the district court's discretion.  See Attwood v. Singletary, 105 F.3d 610, 612 (11th Cir. 1997). Before sanctions are imposed, however, due process requires notice and an opportunity to respond.  Id. at 613; see also Fed. R. Civ. P. 11(c).

The Court retains jurisdiction over collateral matters not involved in the appeal of this action, including whether to impose sanctions pursuant to Rule 11. See Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 379, (1985) (timely filing of a notice of appeal from a final judgment does not divest the district court of jurisdiction over collateral matters not involved in the appeal); Jackson v. Cintas Corp., No. 003-cv-3104, 2004 WL 5545034, at *1 (N.D. Ga. Nov. 4, 2004).

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Clerk of Court is directed to return this action to the Eleventh Circuit to advise that Court of this Court's factual finding that FSP III Kendrick Purchasing Power Holdings, Inc. is a member of Purchasing Power Holdings, LLC, which in turn is the sole member of Plaintiff Purchasing

Power, LLC, and that FSP III Kendrick Purchasing Power Holdings, Inc. is a Delaware corporation.  As a result, the Court concludes that not all members of Purchasing Power Holdings, LLC are diverse from Defendant and thus diversity jurisdiction does not exist over this action.

**IT IS FURTHER ORDERED** that counsel for Plaintiff, including the lawyers who represented to the Court that subject matter jurisdiction existed over this case, **SHOW CAUSE**, in writing on or before February 13, 2015, why sanctions should not be imposed based on the representations to the Court regarding its jurisdiction, and stating in detail the inquiry conducted by counsel into the legal and factual assertions regarding whether complete diversity existed. Defendant shall, on or before March 11, 2015, file any response to Plaintiff's submission and Plaintiff shall, on or before March 20, 2015, file any reply.

**SO ORDERED** this 6th day of January, 2015.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

21