IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PURCHASING POWER, LLC,

                         Plaintiff,

        v.                                                    1:12-cv-258-WSD

BLUESTEM BRANDS, INC.,

                         Defendant.

## OPINION AND ORDER

This matter is before the Court on Plaintiff Purchasing Power, LLC's

("Plaintiff") Response [190] ("Response") to the Court's January 6, 2015, Order to

Show Cause [182] ("Show Cause Order").  Also before the Court is Defendant

Bluestem Brands, Inc.'s ("Defendant")[1] Motion for Involuntary Dismissal,

Attorneys' Fees, and Costs [183] ("Sanctions Motion") and its Motions to

Provisionally File Under Seal [186, 196] ("Motions to File Under Seal").[2]

_____

[1]     Plaintiff and Defendant are sometimes collectively referred to as the
"Parties."

[2]     Defendant seeks to provisionally file under seal Exhibits H and I to the
Declaration of Randall E. Kahnke [183.2] in Support of the Sanctions Motion,
Exhibits A-B, D-E, H-T, and X-Y to the Declaration of Randall E. Kahnke [195.1]
in Support of Defendant's Response to Plaintiff's Response to the Show Cause
Order.  These documents have been designated as highly confidential by Plaintiff.
Defendant requests that these documents, pursuant to the October 19, 2012,
Protective Order entered in this case, be provisionally sealed until Plaintiff moves

## I.   BACKGROUND AND FINDINGS OF FACT[3]

### A.   Plaintiff's Corporate Structure and Introduction

Plaintiff's corporate structure, its resultant citizenship, and the "investigation" Plaintiff and its litigation lawyers performed to determine these facts, are central issues in this matter and are discussed in greater detail later in this Order.  Briefly, Plaintiff is a limited liability company whose sole member is Purchasing Power Holdings, LLC ("Holdings").  Holdings' members are nine (9) individuals, all residents of Georgia, and three legal entities.  Two of these legal entities are limited liability companies: (1) Purchasing Power Investors, LLC, also known as Rockbridge[4] ("Rockbridge") and (2) Stephens Capital Partners, LLC,

---

this Court for their continued protection.  The October 19, 2012, Protective Order, states that any document designated as entitled to protection under the Order which is submitted to the Court in a pleading is entitled to maintain its protected status for ten (10) days.  (October 19, 2012, Protective Order [51] ¶ 11).  During this ten-day period, the party who designated the information as protected may move the Court to continue the protected status.  (Id.).  Plaintiff has not moved to continue the protected status of these exhibits.  The Court, accordingly, denies Defendant's Motions to File Under Seal.

[3]      Much of this background is restated from the Court's January 6, 2015, Order.  Additional factual background is taken from Plaintiff's Response, Defendant's Sanctions Motion, related pleadings and their supporting documents. There are additional fact findings in the "Discussion" section of this Order.  All facts found are based on the record and reasonable inferences supported by the record facts.

[4]      This entity is, at times, referred to by Plaintiff as Rockbridge Growth Equity, LLC.

also known as "Stephens"[5] ("Stephens").  The third entity-member, FSP III
Kendrick Purchasing Power Holdings, Inc. ("FSP III"), is a corporation
incorporated in the State of Delaware.  It was misidentified by Plaintiff and
Plaintiff's litigation lawyers as "FSP III Kendrick Purchasing Power Holdings,
LLC," also known as "Falcon."  The citizenship of these three legal entities (all
three together, the "LLC Members") was relevant to whether the case was properly
removed to this Court based on diversity of citizenship.  Until its June 2014,
investigation into Plaintiff's citizenship at the direction of the Eleventh Circuit,
Plaintiff and its litigation lawyers treated all three of Holdings' entity-members as
limited liability companies.

    Throughout its pleadings and when its corporate officers were testifying,
Plaintiff often discussed Holdings' members—the three legal entities and nine
individuals—as if they were Plaintiff's direct members.  Because Plaintiff often
conflated itself and Holdings throughout these proceedings, and because Holdings
is Plaintiff's sole member, and, thus, any of Holdings' members' citizenships will
directly control Plaintiff's citizenship, the Court will also at times refer, where
appropriate, to Holdings' members as if they were Plaintiff's direct members.

---

[5]     This entity is, at times, referred to by Plaintiff as Stephens-Purchasing
Power, LLC.

It was the fundamental misrepresentation of FSP III to Defendant and to the Court, and Plaintiff's counsel's failure to conduct a competent investigation into Plaintiff's citizenship that resulted in the Court's consideration of sanctions.

B.    Litigation and Jurisdictional Issue

This is an acrimoniously litigated commercial dispute between companies that compete in the business of "payroll deduction" sales, or the sale of goods to employees by allowing deductions from employees' pay.  Plaintiff alleges that Defendant misappropriated Plaintiff's trade secrets, violated provisions of a confidentiality agreement between the Parties, and engaged in fraud.

On December 21, 2011, Plaintiff filed this action against Defendant in the Superior Court of Fulton County, Georgia.  On January 25, 2012, Defendant filed its Notice of Removal [1] ("Notice"), removing the action to this Court on the basis of diversity jurisdiction.  Defendant stated it was "a Delaware corporation with its principal place of business in Eden Prairie, Minnesota, and thus a citizen of Delaware and Minnesota."  (Notice at 2).  Defendant, in relying on information provided by Plaintiff's counsel, stated that Plaintiff, "a Georgia limited liability company, has no members that are citizens of either Minnesota or Delaware."  (Id., citing Exhibit B to the Notice [1.3]).  Exhibit B to the Notice is an e-mail dated

4

January 20, 2012, from Mr. Joe Letzer—counsel for Plaintiff—to Mr. Randall

Kahnke—counsel for Defendant—in which Mr. Letzer represented:

> we are informed by our client that none of the members of the LLC
> are resident citizens of either the states of Minnesota or Delaware.
> We trust this gives you the essential information you requested to
> assess removability on diversity grounds.

([1.3] at 2) (the "January 20, 2012, E-mail").  Plaintiff undertook to provide the

information it and its counsel knew was necessary to invoke this Court's subject

matter jurisdiction.  The circumstances within which it was provided is discussed

later.

In addition to Plaintiff's representations to Defendant regarding jurisdiction,

counsel for Plaintiff, on four separate occasions, represented in pleadings filed with

the Court that the Court had jurisdiction over this case.  On March 2, 2012, in the

Joint Preliminary Report and Discovery Plan [19], Plaintiff represented that there

was no question regarding the Court's jurisdiction.  (Joint Preliminary Report and

Discovery Plan at 15).  On August 16, 2012, Plaintiff filed its Amended Complaint

[39], in which Plaintiff alleged that the "Court has subject matter jurisdiction over

the claims at issue in this action."  (Am. Compl. ¶ 3).  On October 5, 2012,

Plaintiff filed its Motion for Leave to File Second Amended Complaint [49].

Plaintiff's Proposed Second Amended Complaint [49.1] expressly alleged that the

"Court has original subject matter jurisdiction over the claims in this action

pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds the $75,000 statutory minimum, exclusive of interest and costs." (Proposed Second Am. Compl. ¶ 4). On January 18, 2013, Plaintiff filed its Motion for Leave to File Revised Second Amended Complaint [66]. Plaintiff's Revised Second Amended Complaint [66.1] again expressly alleged that the "Court has subject matter jurisdiction over the claims at issue in this action." (Revised Second Am. Compl. ¶ 3).[6]

This case, during its torturous history, was contentious and the litigation tactics employed often troubling. The time required to manage this litigation involved substantial and extraordinary expenditure of judicial resources. Judicial activities included considering motions filed by the Parties and the Court's personal review of hundreds of documents filed, without justification, under seal. On May 9, 2014, the Court granted summary judgment in favor of Defendant on all claims in the case, and the case was concluded [158].

On June 6, 2014, Plaintiff appealed [160]. On June 27, 2014, the Eleventh Circuit docketed its "Jurisdictional Question," noting that the pleadings did not sufficiently allege Plaintiff's citizenship, and asked the Parties if the record adequately proved Plaintiff's citizenship or if a formal amendment to the pleadings

---

[6]    All four of these documents were filed by Plaintiff's counsel, Burr & Forman LLP, on behalf of Plaintiff.

was necessary.  Plaintiff's counsel finally undertook the jurisdiction inquiry they should have conducted before January 20, 2012, and which the Court believed had been conducted considering the jurisdictional representations Plaintiff made repeatedly.  Plaintiff, the Court concludes, now had a different motivation to conduct its investigation into jurisdiction considering the result Plaintiff suffered in the District Court.

In its July 11, 2014, Response to the Jurisdictional Question ("Plaintiff's Response to Jurisdictional Question"), Plaintiff stated, almost two and a half years after Mr. Letzer's January 20, 2012, E-mail, that the evidence showed that the Court lacked jurisdiction over this case.  (Pl.'s Resp. to Jurisdictional Question at 1).  Neglecting to acknowledge that Plaintiff had offered its citizenship representations in the January 20, 2012, E-mail, to avoid disclosure of the LLC Members' members, it choose to shift to Defendant responsibility for the subject matter jurisdiction failure committed by Plaintiff.  Plaintiff argued that Defendant's Notice failed to allege Plaintiff's members and their respective citizenships and any jurisdiction shortcoming was not its responsibility.  (Id. at 8-9).  Plaintiff's representation was made knowing its counsel had assured Defendant and the Court that there was diversity between the Parties, representations upon which Plaintiff and its counsel knew Defendant and the Court would rely.  Plaintiff, in its filing

with the Eleventh Circuit, neglected even to reference the January 20, 2012, E-mail, in which Plaintiff's counsel expressly represented to counsel for Defendant that none of Plaintiff's members are citizens of either the states of Minnesota or Delaware.  Instead, Plaintiff cavalierly stated that the record showed—as it always had—that one of Plaintiff's members,[7] FSP III Kendrick Purchasing Power Holdings, Inc., is a citizen of Delaware, and that complete diversity does not exist and did not exist when this case was removed.  (Id. at 10-11).  Plaintiff's lawyers sanctimoniously argued that this matter was required to be remanded.

Defendant's July 11, 2014, Response to the Jurisdictional Question ("Defendant's Response to Jurisdictional Question") provided a fuller, and more honest, account of Plaintiff's and its lawyer's severe professional shortcomings. The response disclosed the January 20, 2012, E-mail and its origins.  (Def.'s Resp. to Jurisdictional Question at 3).  Defendant stated that it had requested, in 2012, the production of documents from Plaintiff concerning Plaintiff's members and their citizenship, which Plaintiff obstructed by objecting to production of these documents because they were "not relevant."  (Id. at 4-5).  Defendant noted that, on November 12, 2012, counsel for Defendant sent counsel for Plaintiff a letter

---

[7]     As discussed *supra*, FSP III is one of Holdings' members, not one of Plaintiff's members.  Holdings, Plaintiff's sole member, has twelve total members, nine individuals and three legal entities, including FSP III.

regarding Plaintiff's objections to producing the documents, stating that the documents were relevant "because they relate to jurisdiction . . . ."  (<u>Id.</u> at 5). Aware that Defendant wanted to investigate federal jurisdiction, on November 19, 2012, counsel for Plaintiff responded by referring to the January 20, 2012, E-mail, stating Plaintiff's counsel already had identified the citizenship and residence information requested by Defendant, that counsel for Plaintiff had provided the information necessary to determine the existence of federal subject matter jurisdiction and, for those reasons, reiterated their objection to these document requests.  (<u>Id.</u>).  Based on this record history, Defendant stated to the Eleventh Circuit that, because counsel for Plaintiff insisted that its January 20, 2012, representations about citizenship were unqualified and reliable, it declined to require further underlying fact information.

The Parties, on July 14, 2014, based on Plaintiff's delayed representation about FSP III's citizenship, filed their Joint Motion for Remand, requesting that the Eleventh Circuit remand this case to the Court to supplement the record and to make appropriate findings regarding its jurisdiction.  On August 4, 2014, the Eleventh Circuit entered its Remand Order, remanding the case "for the limited purpose of making a factual determination as to whether diversity jurisdiction exists in this case and to permit further proceedings to address jurisdictional

deficiencies, as deemed necessary by the district court."  (Remand Order at 1).

On August 20, 2014, the Court conducted an evidentiary hearing to allow the Parties to present evidence of Plaintiff's citizenship at the time of removal (the "August 20, 2014, Hearing").  At the August 20, 2014, Hearing, Mr. Richard Alfred Carrano, II, Plaintiff's President and Chief Executive Officer, testified that Plaintiff's litigation counsel asked him to prepare a list of Plaintiff's members[8] and their states of residence (the "Member List").  (Tr. of August 20, 2014, Hearing [173] at 8-9 & Pl.'s Ex. 3).  He was instructed only to look for residence information.  Mr. Carrano testified that he did not receive any instruction or guidance from Plaintiff's litigation lawyers regarding what federal jurisdiction requires or what information was needed to determine the citizenship of Plaintiff's members.  (Id. at 22, 50-52).[9]

_____

[8]    Mr. Carrano testified that Plaintiff's sole member was Purchasing Power Holdings, LLC.  (Tr. of August 20, 2014, Hearing [173] at 18).  As noted *supra*, throughout the August 20, 2014, Hearing, Mr. Carrano and Plaintiff's litigation counsel referred to "Plaintiff's members" when apparently discussing Holdings' members.  Holdings' members' citizenship are relevant to Plaintiff's citizenship because Holdings, like Plaintiff, is a limited liability company.  This failure to distinguish between seperate legal entities throughout Plaintiff's corporate structure obstructed the Court's inquiry into the jurisdictional issues required by the Eleventh Circuit.

[9]    Mr. Carrano noted that "the concept of residence and citizenship is a foreign one to me, and as such I interpret that to mean physical location."  (Tr. of August 20, 2014, Hearing at 16).

The Member List states:

| LLC Member | AKA | State of Residence |
|---|---|---|
| Purchasing Power Investors, LLC | Rockbridge | Michigan |
| FSP Kendrick Purchasing Power Holdings, LLC | Falcon | Massachusetts |
| Stephens Capital Partners, LLC | Stephens | Arkansas |
| Keith Calhoun | | Georgia |
| Richard Carrano | | Georgia |
| Elizabeth Halkos | | Georgia |
| Brian Daprano | | Georgia |
| Reena Mattupurath | | Georgia |
| Bob Wimmer | | Georgia |
| Racquel Roberts | | Georgia |
| Eleanor Fulton | | Georgia |
| Alex Hesu | | Georgia |

(Id. at Pl.'s Ex. 3).  Mr. Carrano testified that he obtained this information from the

Unit Purchase and Recapitalization Agreement ("UPRA"),[10] which memorialized

the October 2011 sale transaction in which the LLC Members, through Holdings,

became the new owner of Plaintiff.  (Id. at 9-10).

Mr. Carrano testified that when he prepared the Member List he believed it

to be accurate.  (Id. at 11).  In preparing the Member List, Mr. Carrano looked only

to page 56 of the UPRA, which lists the notice addresses of each of the member

---

[10]    The UPRA was marked as Plaintiff's Exhibit 4 at the August 20, 2014,
Hearing.

entities.  (Id. at 16).  Page 56 lists FSP III as a limited liability company.  (Id.).[11]
Mr. Carrano testified, however, that the second listed member, "FSP III Kendrick
Purchasing Power Holdings, LLC," was actually FSP III, and was incorrectly
identified as a limited liability company.  (Id. at 11-12).  FSP III is, he now
testified, a corporation, incorporated in the State of Delaware.  (Id.).  Mr. Carrano
testified specifically that he was not asked by Plaintiff's litigation lawyers to
identify the individual members of Rockbridge, Stephens, and "FSP III Kendrick
Purchasing Power Holdings, LLC."[12]  (Id. at 43-46).

Mr. Carrano testified that at some point, likely after the initiation of this
action, the UPRA was provided to counsel for Plaintiff.  (Id. at 70).  The UPRA,
unlike on Page 56, on its first page states that FSP III is a Delaware corporation.
(Id. at 69).  Plaintiff's counsel did not ever advise Defendant's counsel or the Court
that FSP III may be a corporation, in conflict with Plaintiff's counsel's prior
representations that FSP III was a limited liability company.[13]

---

[11]     The UPRA, in several other substantive provisions, identifies FSP III as a
corporation.  (Tr. of August 20, 2014, Hearing at 16).

[12]     Mr. Carrano testified that the UPRA identifies the LLC Members as owners
of Holdings, and "assumed" that the buyers are identified as members.  (Id. at
76-77).  Counsel for Defendant stated that the UPRA does not, at any point,
identify FSP III as a member of Plaintiff.  (Id. at 77-78).

[13]     In an effort to deflect Plaintiff's counsel's responsibility for their
misrepresentation, counsel for Plaintiff asked Mr. Carrano at the hearing about
depositions taken by Defendant during discovery, noting that counsel for

Mr. Greg Birge, general counsel of Plaintiff, stated at the hearing that Plaintiff's "cap table" was the best document to identify the members of Plaintiff at the time of removal.[14]  (Id. at 82).  The record evidence shows that Plaintiff's litigation lawyers did not, in preparation for the August 20, 2014, Hearing, make an inquiry about how to determine Plaintiff's citizenship, including the members of the limited liability companies, and, apparently, did not have or request to review the cap table.  Based on the shallow, confusing, and incomplete presentation of evidence by Plaintiff's counsel at the August 20, 2014, Hearing, the Court concluded that the information presented at the hearing was insufficient for it to answer the Eleventh Circuit's jurisdictional question.  (Id. at 77-94).

As a result, on September 23, 2014, the Court scheduled [179] a second evidentiary hearing for October 22, 2014 (the "October 22, 2014, Hearing"), and specifically ordered Plaintiff to present testimony from an officer or senior

---

Defendant did not specifically ask questions about Plaintiff's members.  (Id. at 24-27).  Plaintiff's litigation counsel suggested that they did not fail to identify the citizenship of Plaintiff's members, but only mistakenly identified FSP III as a limited liability company when it is a corporation.  (Id. at 34).  Their position appears to be that even though they knew the importance of citizenship, the need to determine citizenship when evaluating diversity jurisdiction, and had not conducted this evaluation themselves, it was Defendant's mistake to rely on Plaintiff's litigation lawyers' representations in the January 20, 2012, E-mail.

[14]   Mr. Birge was hired by Plaintiff in or around March 2013, and was not present at, or involved in, the discussions between Messrs. Carrano and Delp, and Litigation Counsel at the time of removal.  (Tr. of August 20, 2014, Hearing, at 81:10-14, 82:12-13).

manager of each of Plaintiff's members, and the members of the members of Plaintiff, so the Court could determine the citizenship of each.

At the October 22, 2014, Hearing, Mr. John Schnabel, who is employed by Falcon Investment Advisors ("FIA"), a private equity investment group, testified. He stated that FIA invested in Plaintiff through FIA's "third fund," Falcon Strategic Partners III L.P. (the "Fund").  (Tr. of October 22, 2014, Hearing [180] at 99-101).  Mr. Schnabel testified that the Fund invested in Plaintiff through a "blocker," a corporation that receives money from the Fund to invest thereby enabling the Fund's investors to avoid the federal income tax consequence of their investment.  (Id. at 102-03).[15]

---

[15]     Mr. Schnabel put it this way:

> It's really just a way to make sure that we don't receive income that's ECI related.  So if we were to pull money out of the equity directly -- in other words, we would sell the underlying equity and the money would then flow into the blocker, we would then pay taxes at the blocker, therefore sanitizing it of ECI, UBIT, and then it would go up into the fund.  It wouldn't be tax efficient.  So generally what we do is sell the blocker that owns the shares to whoever is buying it.

(Tr. of October 22, 2014, Hearing at 104).  Mr. Schnabel testified that their fund documents are designed to protect investors from "allow[ing] ECI or UBIT to flow through the fund."  (Id.).  Regarding the "blocker," Mr. Schnabel testified:

> Schnabel: Well, money was sent down by the fund, and 100 percent of the blocker stock was sent back up.

Mr. Schnabel also testified that FSP III was the "blocker" for this investment and that the Fund is the 100% owner of FSP III, which in turn owns a partial interest in Purchasing Power Holdings, LLC, which in turns owns Plaintiff.  (Id. at 104, 109).  Mr. Schnabel testified further that FSP III is a Delaware corporation.  (Id. at 106).  Mr. Schnabel testified that the identification of FSP III as a limited

---

The Court: And there is nothing else that the blocker does other than to take the fund's money –

Schnabel: And pass it on, yes.

The Court: So it's –

Schnabel: It's a cleansing mechanism.  It's a blocker for income.

The Court: That's an interesting term, cleansing mechanism.  Sanitize I think is another word that you have used.  So it's really just a fabrication in order to make sure that the fund doesn't have to pay the taxes on whatever profits –

Schnabel: Yeah, it's really there only to make sure that a certain type of income never hits the fund.
. . .
The Court: That the investor is really the owner that has the equity interest in Purchasing Power L.L.C., but they do that by having created this corporation for the sole purpose really of whatever tax advantage there was as the money flowed from Purchasing Power L.L.C. back to the investor; is that right?

Schnabel: That's right.

(Id. at 119-20).

15

liability company on page 56 of the UPRA was a mistake, and that it is a corporation.  (Id. at 113-16).

Mr. Birge testified, at the October 22, 2014, Hearing, that Purchasing Power Holdings, LLC—Holdings—is the holding company and the 100% owner and only member of Plaintiff.  (Id. at 130, 134).  Mr. Birge testified that the owners of Holdings are: 1) FSP III; 2) Rockbridge; and 3) Stephens, in addition to several individuals[16] who are or were formerly in management.  (Id. at 135).  Mr. Birge testified that he had reviewed the UPRA and sale transaction documents and spoke with the transaction attorneys involved in the original sale transaction, and confirmed that FSP III is not a limited liability company but rather a corporation, as it is identified in all the operative parts of the UPRA.  (Id. at 138-39).  This testimony described the complicated structure of Plaintiff and made clear the need for careful investigation before Plaintiff's litigation lawyers made their unqualified summary misrepresentations in their January 20, 2012, E-mail, and subsequent Court filings.

On January 6, 2015, the Court concluded, based on the evidence and testimony presented at the August 20, 2014, and October 22, 2014, Hearings, that FSP III was incorporated in the State of Delaware and is a Delaware citizen.

---

[16]     The nine individuals identified as Georgia residents on the Member List.

(Show Cause Order at 16-17).  The Court further concluded that complete

diversity, thus, does not exist.  (Id.).  The Court ordered the Clerk of Court to

return this action to the Eleventh Circuit with the Court's factual and jurisdictional

findings.  (Id. at 20-21).  The Court further ordered Plaintiff to show cause why

sanctions should not be imposed based on the misrepresentations, including those

made to the Court, regarding its jurisdiction.  (Id. at 21).

On February 2, 2015, the Eleventh Circuit vacated [184] the judgment in this

case and remanded this action to the Court with instructions to remand the case to

state court because the parties are not completely diverse.  (February 2, 2015,

Order at 1).

C.      Plaintiff's Response to the Show Cause Order

On February 13, 2015, Plaintiff filed its Response to the Show Cause Order,

arguing that sanctions were not warranted in this case.  Plaintiff asserts additional

facts and recasts some of the facts developed during the August 20, 2014, Hearing.

Plaintiff asserts that, on November 29, 2011, litigation lawyers from

Burr & Forman LLP met with Mr. Carrano, and Plaintiff's Chief Financial Officer,

Mr. Chad Delp, to discuss the lawsuit Plaintiff planned to file against Defendant.

(Pl.'s Res. at 3-4).  The Burr & Forman lawyers at the November 29, 2011,

meeting were Ms. Ashby Fox, Ms. Elizabeth Shirley, and Mr. Letzer ("Litigation

Counsel").  (Id. at 2). [17]  They discussed at the meeting what court would have jurisdiction over the lawsuit and they discussed generally Plaintiff's ownership structure.  (Id. at 4).  Mr. Delp and Mr. Carrano explained to Litigation Counsel that Plaintiff's sole member was Purchasing Power Holdings, LLC, and that Holdings' members consisted of a number of individuals that were residents of Georgia, and three limited liability companies—Rockbridge Growth Equity, LLC of Michigan; Falcon Investment Advisors, LLC of Massachusetts; and Stephens-Purchasing Power, LLC of Arkansas.  (Id.).  Mr. Carrano told Litigation Counsel that the members of the LLC Members were high net worth individuals[18] who wanted to remain confidential, that they were primarily residents of Michigan, Massachusetts, and Arkansas, and that none were residents of Minnesota or Delaware.  (Id. at 4-5).  Based on its desire not to disclose the individual members of the LLC Members, Plaintiff and the Litigation Counsel decided to file Plaintiff's claims in Georgia state court.  (Id. at 5-6).  As a result, a more in-depth inquiry into Plaintiff's citizenship was not undertaken.  (Id.).  There is no evidence Plaintiff's

---

[17]    Plaintiff supports its factual contentions with sworn declarations from Mr. Letzer, Ms. Fox, Mr. Carrano, and Mr. Delp, among others.  The Court will cite to Plaintiff's Response instead of these individual declarations.

[18]    These individual members are not the nine (9) individual members of Holdings, but rather the individual members of the LLC Members.

litigation lawyers ever asked to review information to determine who specifically were the LCC Members' members.

On December 30, 2011, Defendant's lead litigation lawyer, Mr. Kahnke, called Mr. Letzer to obtain information from Plaintiff about its ownership structure and citizenship to determine if the case was removable to federal court.  (Id. at 6).  Mr. Letzer told Mr. Carrano that Defendant requested information about Plaintiff's members and the members' states of residence.  (Id.).  There is no indication that Mr. Letzer told him of the purpose of the request or discussed at all the information required to determine federal diversity jurisdiction.  Mr. Carrano told Mr. Letzer that Holdings was Plaintiff's sole member, and that Holdings' members were the nine individuals and the three LLC Members.  (Id. at 7).  Mr. Letzer told Mr. Carrano that he needed to know the residence of all the individuals and of the LLC Members and, specifically, whether any of the members were "residents" of Minnesota or Delaware.  (Id.).  Mr. Letzer again did not explain the legal distinction between residency and citizenship to Mr. Carrano because Mr. Letzer believed the members of the LLC Members of Holdings were ultimately individuals, and an individual is a citizen of his state of residence.  (Id.).

On January 19, 2012, Mr. Letzer followed-up with Mr. Carrano, and also spoke to Mr. Delp regarding Holdings' members.  (Id. at 8).  Mr. Delp told

Mr. Letzer that Holdings' members include three investment limited liability companies: 1) Rockbridge; 2) "FSP III Kendrick Purchasing Power Holdings, LLC;" and 3) Stephens.  (Id.).  Mr. Delp told Mr. Letzer that Rockbridge's members were residents of Michigan, "FSP III Kendrick Purchasing Power Holdings, LLC's" members were residents of Massachusetts, and Stephens' members were residents of Arkansas.  (Id.).  Mr. Delp confirmed that none of the individual members of the LLC Members were residents of Minnesota or Delaware.  (Id. at 9).

On January 20, 2015, Mr. Letzer received an e-mail from Mr. Carrano that contained the Member List, which purported to show each member of Holdings and their state of residence.  (Id.).  Mr. Letzer did not discuss with Mr. Carrano how he prepared the Member List, the source of the information or the conclusions represented on it.  Had he discussed the Member List with Mr. Carrano he would have found the chart was based only on the notice provisions of the UPRA.  (Id. at 9-10).

Based on the residence information Mr. Letzer received from Messrs. Delp and Carrano, and without any further inquiry of them, Mr. Letzer sent his January 20, 2015, E-mail to Mr. Kahnke, informing him that "none of the members of the LLC are resident citizens of the states of Minnesota or Delaware."  (Id.

at 10).  Plaintiff claims Mr. Letzer made this representation to Mr. Kahnke based on his inquiry with Messrs. Delp and Carrano and his "good faith belief" that Holdings' members were not residents of Minnesota or Delaware.  (Id. at 10-11).

Ms. Fox was primarily responsible for drafting and filing Plaintiff's pleadings in this action, including the: 1) Joint Preliminary Report and Discovery Plan; 2) Amended Complaint; 3) Proposed Second Amended Complaint; and 4) Proposed Revised Second Amended Complaint, all of which asserted that diversity jurisdiction existed in this case.  (Id. at 11).  Ms. Fox was copied on the e-mail communications between Mr. Letzer, Mr. Carrano, and Mr. Kahnke, and was also aware that, based on conversations with Mr. Letzer, Mr. Letzer had spoken with Messrs. Carrano and Delp regarding Plaintiff's ownership structure and its citizenship.  (Id. at 11-12).  Ms. Fox did not conduct any independent investigation into the identity or citizenship of Plaintiff's members before she made her jurisdiction misrepresentation to the Court in her four Court filings.  She reviewed only the e-mails exchanged between Messrs. Letzer, Carrano, and Kahnke, and her discussions with Mr. Letzer, and she claims she filed the pleadings she drafted in good faith, believing that the inquiry into Plaintiff's citizenship was sufficient, even though there is no evidence she investigated the nature or scope of the inquiry.  (Id. at 12).  Plaintiff claims that Ms. Fox believed in

good faith that none of Plaintiff's members or its members' members were residents of Minnesota or Delaware. (Id.). She reached this belief knowing, generally, there is a difference between residency and citizenship and that the Eleventh Circuit has specific requirements to determine the citizenship of members of limited liability companies.

Plaintiff's litigation lawyers assert that they did not receive a copy of the UPRA until December 6, 2012, nearly one year after the lawsuit was removed to this Court and months after Plaintiff had filed the Joint Preliminary Report and Discovery Plan, the Amended Complaint, and the proposed Second Amended Complaint. (Id. at 14). Burr & Forman's litigation support team, not Litigation Counsel, reviewed the UPRA, along with many other documents, for privilege, responsiveness to Defendant's discovery requests, and confidentiality before producing documents, including the UPRA, to Defendant. (Id. at 14-15). The Burr & Forman litigation support staff was not instructed to review the UPRA for jurisdictional issues because, Plaintiff asserts, at that time, Burr & Forman's litigation lawyers believed "in good faith" that there was no question that the Court had jurisdiction over this action. (Id. at 15). After this review and after Plaintiff's Litigation Counsel finally reviewed the UPRA, Litigation Counsel still did not

correct the misrepresentation it made to Defendant's counsel or the Court in pleadings they filed.[19]

Plaintiff asserts that at all times prior to its June 2014, investigation into the citizenship of Holdings at the direction of the Eleventh Circuit it, and Litigation Counsel, believed that FSP III was a Massachusetts limited liability company comprised of individual residents of Massachusetts. (Id. at 16). They claim it was only after the June 2014, investigation and their discussions with Mr. Schnabel, that Plaintiff and its counsel

---

[19]     Plaintiff reiterated its blame-shifting strategy, arguing that Plaintiff produced the UPRA to Defendant, and that Defendant's counsel used the UPRA in depositions conducted for this action. (Id. at 13). Plaintiff notes that Mr. Kahnke

> referred to the UPRA during his examination of Rockbridge's 30(b)(6) representative, Kevin Prokop, on May 30, 2013, during which time Mr. Prokop read from the first page of the UPRA and testified that one of the buyers of Purchasing Power, FSP III Kendrick Purchasing Power, Inc., was a Delaware corporation.

(Pl.'s Res. at 15). Plaintiff asserts that it is

> apparent that neither party connected these discrepancies in the UPRA to the jurisdictional issue, given that no potential jurisdictional defect was raised until the Eleventh Circuit sua sponte raised the jurisdictional issue on appeal.

(Id. at 15-16). The Court notes that Plaintiff's litigation lawyers apparently also attended depositions at which the UPRA was used and did not thereafter identify the mischaracterization of FSP III as a limited liability company.

> discovered the typographical errors relating to the status of FSP III;
> learned that FSP III, a Delaware corporation is a "blocker" entity that
> exists in Plaintiff's ownership structure between Holdings and [the
> Fund] for tax purposes; and that because of the blocker's placement in
> Purchasing Power's ownership structure, it destroys diversity
> jurisdiction.

(Id.).

Plaintiff asserts that, had its counsel learned of this jurisdictional defect at

any prior point, it would have immediately informed the Court and Defendant.

(Id.).[20]

D.    Sanctions Motion[21]

On January 30, 2015, Defendant filed its Sanctions Motion.  Defendant

argues that the Court should dismiss Plaintiff's case with prejudice as a sanction

or, in the alternative, award Defendant its attorneys' fees arising from Plaintiff's

counsel's misconduct.  Defendant asserts that the Court should sanction Plaintiff

under the Court's inherent authority and under Rules 16(f),[22] 26(g),[23] and 41(b)[24] of

---

[20]    Plaintiff self-servingly asserts that Burr & Forman "intend[s] to host a
firm-wide internal seminar to educate their lawyers about the facts of this case, to
make every effort to ensure that a similar situation does not occur in the future."
(Pl.'s Res. at 25).

[21]    Plaintiff incorporated the fact section of its Response to the Court's
January 6, 2015, Order to Show Cause into its Response to the Sanctions Motion.

[22]    Rule 16(f) of the Federal Rules of Civil Procedure states that on "motion or
on its own, the court may issue any just orders . . . if a party or its
attorney . . . (B) is substantially unprepared to participate—or does not participate
in good faith—in the [pretrial] conference; or (C) fails to obey a scheduling or

the Federal Rules of Civil Procedure.  Defendant also seeks, under 28 U.S.C.

§§ 1919 and 1447(c),[25] an award of its attorneys' fees and costs incurred following

the removal of this case.

---

other pretrial order." Fed. R. Civ. P. 16(f)(1)(B-C).  Defendant argues that Plaintiff failed to comply with the Court's Standing Order, which requires that a plaintiff promptly advise the Court if it does not allege in its complaint the citizenship of limited liability companies by stating the citizenship of each of their members.  (Sanctions Motion at 11); see also Standing Order, http://www.gand.uscourts.gov/sites/default/files/Standing_Order_Re_Civil_Litigati on.pdf, at 2).  This provision was added to the Standing Order in February 2013. (Sanctions Motion at 11).  Defendant argues that this constitutes a failure to obey a "pretrial order," warranting sanctions under Rule 16(f) of the Federal Rules of Civil Procedure.  (Id.).  Defendant argues also that Plaintiff's denial, in the Joint Preliminary Report and Discovery Plan, that there any objections to jurisdiction, was incorrect and was made without a reasonable inquiry into the facts, and Plaintiff's failure to conduct the required inquiry warrants sanctions.  (Id. at 14).

[23]   Rule 26(g) of the Federal Rules of Civil Procedure states that every signed discovery request, response, or objection is a certification that it is "consistent with these rules and warranted by existing law."  Fed. R. Civ. P. 26(g)(1)(B)(i).  If the signer violates this rule without substantial justification a court may impose sanctions.  Fed. R. Civ. P. 26(g)(3).

[24]   Rule 41(b) of the Federal Rules of Civil Procedure states that if "the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."  Fed. R. Civ. P. 41(b).

[25]   "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).  Several courts have awarded a defendant attorneys' fees where the removal occurred because of a plaintiff's actions in causing the improper removal.  See, e.g., Barraclough v. ADP Auto. Claims Servs., Inc., 818 F. Supp. 1310, 1313 (N.D. Cal. 1993).  Further, "[w]henever any action or suit is dismissed in any district court . . . for want of jurisdiction, such court may order the payment of just costs."  28 U.S.C. § 1919.

Defendant observes it served specific document requests on Plaintiff requesting the production of documents sufficient to identify the "residence and citizenship of all members" of Plaintiff and other limited liability companies that Defendant believed were members of Plaintiff when the Complaint was filed.  (Id. at 3).  If any of the members were limited liability companies, Defendant requested Plaintiff to provide residence and citizenship information for those members' members.  (Id.).  Plaintiff objected to his request, claiming it was overly broad, burdensome, sought information not in Plaintiff's possession, custody, or control, and was not reasonably calculated to lead to the discovery of admissible evidence. (Id. at 3-4).  Relying on this objection, Plaintiff did not produce the requested information.  Defendant responded to the objection, noting that the request related to the Court's jurisdiction.  (Id. at 4).

In her November 19, 2012, letter to Defendant's counsel, Ms. Fox, one of Plaintiff's Litigation Counsel, stated that certain of the jurisdiction-related information requested was not in Plaintiff's possession, custody, or control.[26] (Exhibit E to Kahnke Declaration [183.7] at 9).  She stated also that Mr. Letzer sent Defendant's counsel his January 20, 2012, E-mail, identifying the citizenship and residence information requested by Defendant for it to use in determining

---

[26]    This representation is not credible.

subject matter jurisdiction in this case.  (Id.).  This implied that, because Litigation

Counsel had expressly represented information from which Defendant could

determine citizenship, discovery on these issues was unnecessary.  Ms. Fox failed

to see how the "residence or citizenship of non-parties has any bearing whatsoever

on jurisdiction in this case."  (Id.).[27, 28]

Defendant argues that, in addition to its authority under Rules 16(f), 26(g),

and 41(b) of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 1919 and

1447(c),  the Court should sanction Plaintiff under the Court's inherent power.

(Sanctions Motion at 20-21, 23).  Defendant argues that it was entitled to rely on

Plaintiff's counsel's repeated and unqualified representations regarding

jurisdiction.  (Id. at 20).  This is especially true where the jurisdiction information

it sought was only available from Plaintiff and Plaintiff assured Defendant's

---

[27]    This representation supports that Plaintiff's counsel's understanding of
Eleventh Circuit precedent was either wholly inadequate or that counsel was
seeking to misdirect Defendant from demanding the jurisdictional discovery it
requested and which Plaintiff's litigation lawyers never sought themselves.

[28]    Defendant argues that these specious objections to Defendant's discovery
requests related to jurisdiction warrant sanction under Rule 26(g) of the Federal
Rules of Civil Procedure.  (Sanctions Motion at 15-17).  Defendant argues further
that Plaintiff's failure to comply with the Court's Standing Order and its failure to
conduct a thorough investigation prior to making representations about the LLC
Members' citizenship in the Joint Preliminary Report and Discovery Plan, warrants
sanction under Rule 41(b) of the Federal Rules of Civil Procedure.  Had Plaintiff's
counsel simply responded to Defendant's reasonable and appropriate discovery
requests, rather than speciously objecting to them, they may have discovered their
misrepresentation about FSP III.

counsel of its citizenship to ward off jurisdictional discovery into limited liability company members, whose identity Plaintiff and its lawyers were committed to keeping confidential.  (Id.).  Defendant argues that it is entitled to its attorneys' fees and costs because of Plaintiff's failure to disclose the facts necessary for it to properly determine jurisdiction.  (Id. at 24-25).

## II.    DISCUSSION

### A.    Legal Standard

Rule 11 of the Federal Rules of Civil Procedure provides that attorneys who present to the Court a pleading, written motion, or other paper "certif[y] that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . [the] legal contentions are warranted by existing law [and] the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(2-3).  A district court may impose sanctions under Rule 11 "even when subject-matter jurisdiction is eventually found lacking." Willy v. Coastal Corp., 503 U.S. 131, 139 n.5 (1992).

Rule 11 provides that the district court, on its own initiative, may require a party to show cause why its conduct has not violated Rule 11(b).  Fed. R. Civ. P. 11(c)(3).  Imposing sanctions pursuant to Rule 11 is committed to the district court's discretion.  See Attwood v. Singletary, 105 F.3d 610, 612 (11th Cir. 1997).

Before sanctions are imposed, however, due process requires notice and an opportunity to respond.  Id. at 613; see also Fed. R. Civ. P. 11(c).  In a proceeding initiated by the court, the court applies a higher standard—akin to contempt—than it applies in a party-initiated proceeding.  Kaplan v. DaimlerChrysler, A.G., 331 F.3d 1251, 1255 (11th Cir. 2003).  The Rule 11 inquiry incorporates an objective standard, which "tests the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted."  Donaldson v. Clark, 819 F.2d 1551, 1556 (11th Cir. 1987).

Rule 26(g) of the Federal Rules of Civil Procedure requires discovery responses to be signed by at least one attorney of record, and that signature "certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry" that the response or objection is "consistent with these rules and warranted by existing law [and] not interposed for any improper purpose."  Fed. R. Civ. P. 26(g)(1)(B)(i-ii).  Rule 26(g)(3) provides:

> If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

Fed. R. Civ. P. 26(g)(3).

The Court also has the inherent power to police itself and those appearing before it.  See Sciarretta v. Lincoln Nat. Life Ins. Co., 778 F.3d 1205, 1212 (11th Cir. 2015).  "The key to unlocking that inherent power is a finding of bad faith."  Id.; see also Dial HD, Inc. v. ClearOne Commc'ns, 536 F. App'x 927, 929 (11th Cir. 2013) ("Before imposing sanctions under a district court's inherent powers, the district court must make a finding of bad faith.").  "Once unlocked, the power carries with it the authority to assess attorney's fees as a sanction for bad faith conduct."  Sciarretta, 778 F.3d at 1212.

 "Bad faith is an objective standard that is met if the party's conduct was objectively reckless . . . ."  Dial HD, 536 F. App'x at 929.  "[O]bjectively reckless conduct is enough to warrant sanctions even if the attorney does not act knowingly and malevolently."  Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1241 (11th Cir. 2007) (authorizing sanctions under 28 U.S.C. § 1927).  "Reckless conduct . . . is a gross deviation from what a reasonable person would do."  Reckless, Black's Law Dictionary (10th ed. 2014).  "Determining whether conduct is reckless necessarily involves comparing the conduct objectively against the conduct of a reasonable attorney."  Amlong, 500 F.3d at 1240.  "If particularly egregious, the pursuit of a claim without reasonable inquiry into the underlying

facts can be the basis for a finding of bad faith."  See Barnes v. Dalton,

158 F.3d 1212, 1214 (11th Cir. 1998).

    B.    Analysis

        1.    Sanctions Against Plaintiff Directly

Defendant argues that the Court should sanction Plaintiff by dismissing

Plaintiff's claims with prejudice.  Defendant argues further that the Court should,

in addition to or in lieu of dismissal with prejudice, award it attorneys' fees and the

costs in this action, in the amount of $4,361,442.43, plus additional attorneys' fees

to prepare the Sanctions Motion.  (Sanctions Motion at 25).

    The Court declines to sanction Plaintiff directly.  The record established at

the August 20, 2014, Hearing and the October 22, 2014, Hearing, shows that

Plaintiff's Litigation Counsel failed completely to provide Mr. Carrano with any

instructions regarding the information counsel needed to determine Plaintiff's

citizenship and the importance of the information relating to determining whether

the Court had jurisdiction in this matter.  (Tr. of August 20, 2014, Hearing at 22,

50-52).  In its responses to the Show Cause Order and the Sanctions Motion,

Plaintiff now has provided some additional detail regarding Plaintiff's counsel's

investigation into jurisdiction, more than Mr. Carrano provided on

August 20, 2014.  Nothing in Plaintiff's latest submission contradicts

Mr. Carrano's testimony that he did not receive any instructions or guidance regarding what federal jurisdiction requires or what information needed to be provided to Plaintiff's litigation lawyers to determine the citizenship of Plaintiff's members.

The issue before the Court is whether Plaintiff's litigation lawyers failed in their duties, including to the Court, under the Federal Rules of Civil Procedure, and under this Court's Local Rules, to assert proper objections to discovery and to properly investigate whether jurisdiction existed before they signed and filed the: 1) Joint Preliminary Report and Discovery Plan; 2) Amended Complaint; 3) Proposed Second Amended Complaint; and 4) Proposed Revised Second Amended Complaint.  It is undeniable that they failed to conduct a minimally competent investigation to develop the citizenship information they knew Defendant needed to remove and failed completely to evaluate whether jurisdiction existed when they filed pleadings alleging that the Court had jurisdiction over this case.  The representations made to the Court are legal representations, which Plaintiff entrusts its lawyer to make—and to make properly.  It would, in the Court's view, be unwarranted to hold Plaintiff directly responsible for a failing for which Plaintiff's litigation lawyers were responsible.  The Court concludes that

involuntary dismissal of Plaintiff's claims with prejudice,[29] or imposition of

monetary sanctions against Plaintiff,[30] is not appropriate here.

    2.    Sanctions Against Plaintiff's Litigation Counsel

        a)    Findings of Fact

Plaintiff's counsel, on five separate occasions, misrepresented to Defendant,

to the Court, or both, that diversity of citizenship existed in this case because

Plaintiff was not a citizen of Minnesota or Delaware.  Mr. Letzer made the first

misrepresentation to Mr. Kahnke in his January 20, 2012, E-mail, when he wrote

that he was "informed by our client that none of the members of the LLC are

resident citizens of either the states of Minnesota or Delaware."  (January 20, 2012,

E-mail at 2).  Mr. Letzer knew why Defendant wanted this information, knew

Plaintiff did not want to disclose information about Plaintiff's members, and made

---

[29]    The Parties dispute whether the Court has the authority, in the absence of
subject matter jurisdiction, to dismiss Plaintiff's claims with prejudice as a
sanction.  The Court was instructed in the Eleventh Circuit's February 2, 2015,
Order, to remand the case to state court because the Parties are not completely
diverse.  The Court concludes that is the correct disposition of the claims in this
case.

[30]    Where an attorney has violated Rule 11(b)(2) of the Federal Rules of Civil
Procedure by presenting a pleading to the Court that asserts legal contentions
formed without a reasonable inquiry, Rule 11 prohibits the imposition of monetary
sanctions against the party represented by that attorney.  See Fed. R. Civ. P.
11(c)(5)(A) ("The court must not impose a monetary sanction . . . against a
represented party for violating Rule 11(b)(2).").

the misrepresentation knowing Defendant and the Court would rely upon it.[31]

Considering the slipshod "investigation" Plaintiff's counsel made into the

citizenship of Plaintiff's members and knowing the complexity of its business

organization, the Court necessarily concludes that Plaintiff's litigation lawyers

failed completely to perform their professional duties to the Parties and the Court

in this matter.

It was this wholly inadequate investigation, the misrepresentations that

resulted from it, and Plaintiff's lawyers' decision to continue to rely upon it, that

resulted in Ms. Fox misrepresenting to the Court, in the March 2, 2012, Joint

Preliminary Report and Discovery Plan, in the August 16, 2012, Amended

Complaint, and in two proposed second amended complaints, that the Court had

subject matter jurisdiction.  Competent investigation into Plaintiff's members'

citizenship would have shown that diversity jurisdiction was not present.  Ms. Fox,

in Plaintiff's Proposed Second Amended Complaint, expressly and plainly asserted

that the "Court has original subject matter jurisdiction over the claims in this action

pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship

between the parties, and the amount in controversy exceeds the $75,000 statutory

minimum, exclusive of interest and costs."  (Proposed Second Am. Compl. ¶ 4).

---

[31]     Plaintiff's counsel also made certified objections to discovery requesting
information related to Plaintiff's citizenship.

Plaintiff's Litigation Counsel seeks to excuse its conduct by maintaining that the only error they made in the assessment of jurisdiction was incorrectly identifying FSP III as a limited liability company, instead of a Delaware corporation.  As the Court noted in its Show Cause Order, this framing of Plaintiff's counsel's mistake disguises the inadequacy and incompleteness of counsel's conduct.  On the record here, any reasonable lawyer, especially ones employed by a large corporate law firm, would have thoughtfully and sufficiently investigated the citizenship of Plaintiff and its members because that was required to ascertain whether federal diversity jurisdiction existed.  That is especially true where, as here, the Eleventh Circuit's requirements for evaluating the citizenship of limited liability companies is well established.  See Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C., 374 F.3d 1020, 1022 (11th Cir. 2004); RES-GA Creekside Manor, LLC v. Star Home Builders, Inc., No. 10-cv-207, 2011 WL 6019904, at *3 (N.D. Ga. Dec. 2, 2011).  Plaintiff's litigation lawyers, in January 2012, and each time they made jurisdictional allegations in this case, failed to conduct the fundamental investigation required by the Federal Rules of Civil Procedure.  Failure to make that inquiry here, considering the number of LLC Members, was reckless.

Mr. Letzer, Ms. Fox, and Ms. Shirley, before this case was filed, discussed with Messrs. Carrano and Delp the issue of federal jurisdiction to determine where Plaintiff could file suit against Defendant.  (Pl.'s Res. at 3-4).  At that meeting, they realized Plaintiff's corporate structure was complex and confusing, and that individual members of the LLC Members were people of high net worth whom Plaintiff did not want to identify.  The facts show that Messrs. Carrano and Delp focused on avoiding disclosure of the identity of individuals involved in Plaintiff's financing.  Because these individuals' identities would have to be disclosed to show federal diversity jurisdiction, Plaintiff and its litigation lawyers decided to file in state court.

The issue of Plaintiff's membership, however, arose when Defendant asked for discovery about the members to determine if the case could be removed. Plaintiff's litigation lawyers, despite knowing the relationship of the requested discovery to determining if this case was removable, frivolously objected that the information requested was not relevant.[32]  The strategy to avoid the disclosure of individual members' identities was to develop a representation sufficient to assure

---

[32]     This objection violated litigation counsel's obligations under Rule 26(g)(1) of the Federal Rules of Civil Procedure because the objection was to discovery of information necessary to evaluate jurisdiction and was an objection that was calculated to avoid discovery of information Plaintiff told its lawyers it did not want disclosed.  The objection alone warrants sanctions for violation of counsel's Rule 26(g) certification.  See Fed. R. Civ. P. 26(g)(3).

Defendant that diversity existed but without disclosing the identity of individual members.  The representation made was that none of the LLC Members were citizens of either Delaware or Minnesota.  By stating this information was sourced from their client they suggested a responsible investigation into citizenship had been conducted.  We now know that was not done.  There is no evidence that Litigation Counsel investigated Plaintiff's citizenship.  These express representations, thus, were made with the scantest of inquiries, knowing Defendant intended to rely on them in its jurisdictional analysis.  The result was that Plaintiff's litigation lawyers were able to accomplish Plaintiff's objective of not having to disclose the identity of the LLC Members' members.

Plaintiff and Litigation Counsel thereafter engaged in tunnel-vision reliance on their inadequately determined initial position that no member was a citizen of Delaware or Minnesota.  In doing so, and content to rely on the superficial investigation they conducted, Plaintiff's Litigation Counsel repeatedly filed pleadings assuring opposing counsel and the Court that diversity existed and that there was no question regarding jurisdiction.  This they did in four Court filings.  Their "investigation" in January 2012, consisted of a conversation with Mr. Delp, and a single exchange of e-mails with Mr. Carrano, who testified at the August 20, 2014, Hearing, that Mr. Letzer never told him what federal jurisdiction

requires, the importance of the issue, or what information was needed to determine the citizenship of Plaintiff's members.  He was not asked by Litigation Counsel even to identify the members of the LLC Members, and, even if they had, and as unbelievable as it may be, he would not have been able to identify the members. (Tr. of August 20, 2014, Hearing at 22, 43-46, 50-52).  Asking that question alone—as simple a question as it is—likely would have put Litigation Counsel on notice that they needed to investigate the LLC Members' citizenship further.

Litigation Counsel's misrepresentations about Plaintiff's citizenship were not simply a misidentification of FSP III as a limited liability company.  The deficiency here was Mr. Letzer's failure to provide any guidance to Mr. Carrano about the facts needed to determine the citizenship of limited liability companies, the importance of the determination, and that it would be relied on to invoke this Court's jurisdiction.  Mr. Letzer failed to conduct the most basic jurisdictional investigation or to properly advise Mr. Carrano what he needed, choosing instead to rely on the Member List Mr. Carrano prepared, not even knowing the basis for its conclusions or the source of the facts used to prepare it.  It was not reasonable, and professionally inadequate, to do so.

Indeed, the Member List, a half-page document, on its face would cause any lawyer to question whether it was sufficiently reliable to support the representation

Mr. Letzer intended to make to Defendant.  It does not list the individual members of the LLC Members.  (See Tr. of August 20, 2014, Hearing at Pl.'s Ex. 3).  It identifies only the nine individual members of Holdings, all residents of Georgia, and conclusorily lists the "State of Residence" of Rockbridge as Michigan, "FSP III Kendrick Purchasing Power Holdings, LLC" as Massachusetts, and Stephens as Arkansas.  On its face, it does not provide the information necessary to make the representations Mr. Letzer provided to Defendant's counsel.  Mr. Letzer knew that neither he nor Mr. Carrano knew who the individual members of the LLC Members were, and it is evident he did not ask Mr. Carrano where he got the information provided.  If Mr. Letzer had conducted the shallowest of inquiries, he would have learned that Mr. Carrano obtained it from the notice provision of the UPRA, and then would have realized that a further investigation was required.

Plaintiff seeks to sidestep its counsel's professionally deficient conduct by asserting repeatedly that it was Defendant, as the removing party, who had the burden to establish jurisdiction.  (Pl.'s Res. in Opp. to Sanctions Mot. [193] at 18).  That is true, but in this case Plaintiff actively sought to avoid providing the factual information Defendant requested and Plaintiff's counsel maneuvered Defendant into accepting factual representations that would avoid Plaintiff having to disclose the LLC Members' members' identities.  This was done in a calculated way,

knowing that Defendant could not have obtained the jurisdictional information it needed from any source other than Plaintiff.  It is a hollow defense indeed to say you should not have believed what Litigation Counsel—officers of the court—told you.

Litigation Counsel's professional derelictions continued with subsequent filings in this matter.  Ms. Fox, when she filed pleadings, had an independent professional obligation to investigate the allegations she asserted.  See Pavelic & LeFlore v. Marvel Entm't Grp., 493 U.S. 120, 125 (1989) ("The signing attorney cannot leave it to some trusted subordinate, or to one of his partners, to satisfy himself that the filed paper is factually and legally responsible; by signing he represents not merely the fact that it is so, but also the fact that he personally has applied his own judgment.").  The certification requirements of Rule 11(b) make that clear.  See Fed. R. Civ. P. 11(b).  Ms. Fox abdicated that responsibility, compounding the problem here by blindly relying on Mr. Letzer's inadequate inquiry.  The result was that Ms. Fox, in four filings, wrongfully alleged that diversity of citizenship existed.  It is indisputable that Plaintiff's litigation lawyers knew early that a filing in federal court would require disclosure of Plaintiff's members.  Their response when Defendant considered removal was to stonewall

jurisdictional discovery and dissuade Defendant from seeking it, by promising to provide the information Defendant sought about members' citizenship.

The issue now is whether Plaintiff's counsel's performance warrants sanctions under the Federal Rules of Civil Procedure, the Court's inherent powers, or both.

b)      Analysis

To sanction Plaintiff's counsel under the Court's inherent powers, the Court must determine whether Plaintiff's counsel's performance, and their failure to perform a reasonable inquiry into Plaintiff's citizenship before they affirmatively represented to Defendant's counsel and to the Court that diversity jurisdiction existed, constituted bad faith.

"Bad faith is an objective standard that is met if the party's conduct was objectively reckless . . . ." Dial HD, 536 F. App'x at 929. "Reckless conduct . . . is a gross deviation from what a reasonable person would do." Reckless, Black's Law Dictionary (10th ed. 2014). "Determining whether conduct is reckless necessarily involves comparing the conduct objectively against the conduct of a reasonable attorney." Amlong, 500 F.3d at 1240. "If particularly egregious, the pursuit of a claim without reasonable inquiry into the underlying facts can be the basis for a finding of bad faith." See Barnes, 158 F.3d at 1214.

The issue here, thus, is whether Plaintiff's litigation counsel's specious inquiry into Plaintiff's jurisdiction and their jurisdictional misrepresentations were reckless.

The record in this case shows that Plaintiff's counsel failed entirely to give even basic instructions to Mr. Carrano when he was investigating the residence—and not citizenship—of Holdings' members.  Mr. Letzer, after receiving the Member List from Mr. Carrano, failed to inquire from where this information was obtained in order to ensure that the representation he made to Mr. Kahnke was accurate.

Mr. Letzer knew—as did the litigation lawyers in his firm with whom he was working—of the investigation needed to determine federal diversity jurisdiction.  Indeed, Mr. Letzer and his partners considered that issue in making their initial decision in what court to file this action.  They knew equally well, and their subsequent litigation conduct in seeking to qualify wide swaths of information as confidential shows, that their client did not want to disclose its investor sources.  The Court now having a clear and more complete record concludes that Plaintiff's litigation counsel was reckless and was motivated largely by the desire to accommodate their client's expressed outcome of not having to

disclose the identity of wealthy individuals who, the record shows, are very important to Plaintiff.[33]

Ms. Fox stated in response to Defendant's jurisdictional discovery request that she failed to see how the "residence or citizenship of non-parties has any bearing whatsoever on jurisdiction in this case."  (Exhibit E to Kahnke Declaration at 9).  This continued position is incredible, obstructionist, and falls well below the standard expected of lawyers in our courts.  It violated her Rule 26(g) certifications.  See Fed. R. Civ. P. 26(g)(1)(B)(i-ii) ("By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry [it is] consistent with these rules and warranted by existing law [and] not interposed for any improper purpose.").

When she offered this objection she knew full well that Defendant was considering removal and her colleagues at her firm knew their client's strong objection to having to provide the information requested.  Ms. Fox, and Plaintiff's counsel in general, knew that the citizenship of non-party members of limited liability companies have a critical bearing on diversity jurisdiction when a party is

---

[33]    Litigation Counsel, in response to the Court's direction at the August 20, 2014, Hearing, provided the Court with information about the LLC Members' members.  These documents were not filed publically, and Plaintiff made clear that these documents were considered, by Plaintiff, to be highly confidential.  (See Notice of Hand Delivered Letter with Highly Confidential Exhibits to Judge Duffey [178]).

a limited liability company.  See Rolling Greens, 374 F.3d at 1022 (noting that a limited liability company, unlike a corporation, is a citizen of any state of which one of its members is a citizen, not of the state where the company was formed or has it principal office); RES-GA, 2011 WL 6019904, at *3 ("[W]hen an entity is composed of multiple layers of constituent entities, the citizenship determination requires an exploration of the citizenship of the constituent entities as far down as necessary to unravel fully the citizenship of the entity before the court.").  Yet, Ms. Fox, without knowing the citizenship of the non-party members of the LLC Members, affirmatively represented to Defendant and the Court on multiple occasions that diversity jurisdiction existed in this case.

Plaintiff's litigation lawyers' conduct fell well outside the bounds of acceptable conduct in litigation and it can be characterized as calculatingly reckless.  See Barnes, 158 F.3d at 1214 (noting that the pursuit of a claim without reasonable inquiry into the underlying facts can be the basis for a finding of bad faith.).  The result was the considerable expenditure, now all for naught, for Defendant to successfully defend against Plaintiff's claims.  Defendant now is required, on remand, to litigate in Georgia state court.

Plaintiff's litigation counsel here engaged in conduct that is sanctionable under Rule 26(g)(3) of the Federal Rules of Civil Procedure and the Court's

inherent powers.[34]   The proper sanction here is an award of attorneys' fees and

costs.[35]   Defendant seeks reimbursement of $4,361,442.43 in attorneys' fees and

costs it incurred after this case was removed to this Court.[36]   Defendant also seeks

attorneys' fees and costs incurred in having to brief its Sanctions Motion.

---

[34]       Having granted Defendant's Sanctions Motion, and in view of the
representations of Plaintiff's counsel that it intends to host a firm-wide internal
seminar to educate their lawyers about this case, the Court declines to sanction
Plaintiff's counsel further under its authority under Rule 11.  The Court notes,
however, that Plaintiff's counsel's jurisdictional representations in their four Court
pleadings violated Rule 11(b) of the Federal Rules of Civil Procedure.  See
Fed. R. Civ. P. 11(b)(2-3) ("By presenting to the court a pleading, written motion,
or other paper--whether by signing, filing, submitting, or later advocating it--an
attorney or unrepresented party certifies that to the best of the person's knowledge,
information, and belief, formed after an inquiry reasonable under the
circumstances . . . the claims, defenses, and other legal contentions are warranted
by existing law [and] the factual contentions have evidentiary support . . . .").
Rule 11 makes clear the importance of an attorney's certification that he performed
an "inquiry reasonable under the circumstances" by authorizing sanctions,
including monetary sanctions, where Rule 11(b) is violated.  See Fed. R. Civ. P.
11(c).

[35]       The Court declines to authorize sanctions pursuant to Rule 16(f) of the
Federal Rules of Civil Procedure because the Court's Standing Order that requires
a plaintiff to promptly advise the Court if it does not allege in its complaint the
citizenship of limited liability companies by stating the citizenship of each of their
members, was not in force at the time Plaintiff's counsel conducted its shallow
investigation into Plaintiff's citizenship.

[36]       As a practical matter, any attorneys' fees and costs awarded for Plaintiff's
counsel's conduct in violation of Rule 26(g) will be subsumed in the attorneys'
fees and costs awarded under the Court's inherent powers on account of Plaintiff's
counsel's inadequate investigation into jurisdiction and their misrepresentations to
Defendant and the Court.

While Defendant, on remand, likely will be required to relitigate issues in this matter, the Court concludes that a portion, maybe even a substantial one, of its work can be used in the state court case. That is, the fees it has paid and the resultant product are not valueless. For example, discovery and depositions taken in this action are not required to be retaken. Motions filed in this case will likely be refiled in Georgia state court, likely with modest revisions. To award to Defendant all of its fees and costs thus would not be reasonably tailored to remedy the harm Defendant suffered as a result of Plaintiff's counsel's misrepresentations about Plaintiff's citizenship. Defendant must be required to take reasonable measures to identify the attorneys' fees and costs it incurred in this action that it would not have incurred if the case had not been removed. The Court anticipates this will result in a material reduction of the fees and costs claimed.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Bluestem Brands, Inc.'s Motion for Involuntary Dismissal, Attorneys' Fees, and Costs [183] is **GRANTED IN PART**. Defendant is entitled to an award of the attorneys' fees and costs that it would not have otherwise incurred in this action if the case had not been removed to this Court. Defendant shall file, on or before October 26, 2015, a motion for

46

attorneys' fees and costs.  Defendant may include only the attorneys' fees and costs that it would not have otherwise incurred if the case had not been removed to this Court.  Defendant also shall disclose the criteria it used in making this determination in detail sufficient to show it is claiming only attorneys' fees and costs it would not otherwise have incurred.

**IT IS FURTHER ORDERED** that Defendant's Motions to Provisionally File Under Seal [186, 196] are **DENIED AS MOOT**.

**SO ORDERED** this 25th day of September, 2015.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE