IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PURCHASING POWER, LLC,

Plaintiff,

v.                                                  1:12-cv-258-WSD

BLUESTEM BRANDS, INC.,

Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant Bluestem Brands, Inc's

("Defendant") Motion for Attorneys' Fees and Costs [202].

## I.  BACKGROUND

On September 25, 2015, the Court entered its Order [201] on Defendant's

Motion for Involuntary Dismissal, Attorneys' Fees, and Costs [183] in which

Defendant sought sanctions against Plaintiff Purchasing Power, LLC ("Plaintiff")

and its counsel for misrepresenting to Defendant and to the Court that the

citizenship of Plaintiff satisfied the requirements for diversity of citizenship and

that the Court had subject matter jurisdiction in this case.  The Court presided over

this difficult and contentious litigation for two and a half years, ultimately entering

summary judgment in favor of Defendant on all of Plaintiff's claims.  During the

course of the litigation, counsel for Plaintiff represented to the Court on no fewer than on five separate occasions that the Court had jurisdiction over this matter.  It was not until Plaintiff appealed and the Circuit Court asked again whether complete diversity existed between all of Plaintiff's limited liability company members and Defendant that Plaintiff's counsel acknowledged that a further review disclosed that the parties were not diverse.  The Circuit Court remanded the case to the Court to make a "factual determination as to whether diversity jurisdiction exists."  [167].

In two separate evidentiary hearings, the Court heard evidence regarding the citizenship of Plaintiff's limited liability company members.  Despite the incomplete, ambiguous and seemingly evasive testimony of Plaintiff's witnesses, the Court finally was able to determine the parties were not diverse, and advised the Court of Appeals of its factual finding.  [182].  The Court of Appeals directed that the case be remanded to the state court from which it was removed.

Finding that "[i]t was the fundamental misrepresentation of [one of Plaintiff member's citizenship] to Defendant and to the Court, and Plaintiff's counsel's failure to conduct a competent investigation into Plaintiff's citizenship," the Court, determined that "Plaintiff's litigation counsel . . . engaged in conduct that is sanctionable under Rule 26(g)(3) of the Federal Rules of Civil Procedure and the

Court's inherent powers." (September 25, 2015, Order at 44-45). The Court

determined further that "[t]he proper sanction . . . is an award of attorneys' fees

and costs [Defendant] incurred after this case was removed to this Court." (Id. at

45). The Court determined that the attorneys' fees and cost to which Defendant

was entitled are those "it incurred in this action that it would not have incurred if

the case had not been removed." Id. at 46. This limitation was imposed because

the Court determined that "[t]o award to Defendant all of its fees and

costs . . . would not be reasonably tailored to remedy the harm Defendant suffered

as a result of Plaintiff's counsel's misrepresentations . . . ." That is, the Court

intended not to reimburse attorneys' fees for services provided where the resulting

work product could be used in the litigation on remand.[1]

Defendant has now submitted its attorneys' fees and cost request and

Plaintiff has filed its objections to it. The determination of reasonable attorneys'

fees and costs to be awarded is now before the Court.

---

[1]      The Court intends to compensate Defendant for attorneys' fees and costs it
incurred and which may now be re-incurred on remand. That is, reimbursement
will be allowed for attorneys' fees and expenses that will be duplicated in the state
court case.

## II. LEGAL STANDARD

The Court concludes, and the parties agree, that the lodestar analytical method applies in evaluating whether the attorneys' fees and expenses requested here are reasonable.  See, e.g., 28 U.S.C. § 1927 (authorizing fees "*reasonably* incurred") (emphasis added); In re Trinity Indus., Inc., 876 F.2d 1485 (11th Cir. 1989) (citing Hensley v. Eckerhart, 461 U.S. 424, 434 (1983); Norman v. Hous. Auth. of City of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988)). The lodestar figure is calculated by "multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate."  Id. at 1495.  The party seeking attorneys' fees "is responsible for submitting satisfactory evidence to establish both that the requested rate is in accord with the prevailing market rate and that the hours are reasonable."  Duckworth v. Whisenant, 97 F.3d 1393, 1396 (11th Cir. 1996).  "[H]ours that are excessive, redundant or otherwise unnecessary" should be excluded from the amount claimed.  Hensley, 461 U.S. at 434.

"After determining the lodestar, the court may adjust the amount depending upon a number of factors, including the quality of the results and representation of the litigation."  Duckworth, 97 F.3d at 1396; see also Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).  In evaluating a claim for attorneys' fees, the Court, itself being an expert on these questions, "may consider

its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment." Id. (quoting Campbell v. Green, 112 F.2d 143, 144 (5th Cir. 1940)); see also In re Holywell Corp., 967 F.2d 568, 571 (11th Cir. 1992) ("Under Norman, resolution of issues regarding hourly rates and total hours billed are generally within the trial court's discretion."). Ultimately, "[t]he determination of a reasonable attorney's fee is left to the sound discretion of the trial judge." Weeks v. S. Bell Tel. & Tel. Co., 467 F.2d 95, 97 (5th Cir. 1972).

## III. ANALYSIS

### A. Reimbursable attorneys' fees and expenses

Defendant describes the attorneys' fees and expenses for which it applies by segmenting its legal services into four phases. Each of these phases reflects a different period of activity in the litigation. This framework aids in evaluating Defendant's reimbursement request including whether the services provided are those that would not have been incurred if the case was not removed, the reasonableness of the attorneys' fees and costs requested, and Plaintiff's objections to the request. The Court considers each of the time periods separately, but begins with an evaluation of the reasonableness of the hourly rates of the timekeepers who billed time for their legal services in this matter.

1. <u>Reasonable hourly rates in the locality</u>

There are three classes of timekeepers who billed for the legal services provided to Defendant on this matter:  partners, associates and paraprofessionals.[2] The Court reviewed the hourly rates that were in place for Defendant's lawyers during the four phases that are the subject of Defendant's attorneys' fees and expense application.  In considering the partner, associate and paraprofessional rates over the four phases,[3] the Court finds the rates comport, with insignificant variation, with the rates that Plaintiff's expert determined were reasonable lodestar rates for use in evaluating Defendant's attorneys' fee and expense request.  The rates used by Plaintiff were $650 per hour for partners, $350 per hour for associates, and $225 per hour for paraprofessionals.  The hourly rates charged by Defendant's counsel also are consistent with those charged by competent and experienced counsel for litigation of this type in the Atlanta metropolitan area.

---

[2]     Faegre Baker Daniels employed a "Project Manager Complex Matters" on this engagement.  This timekeeper billed at an hourly rate of $290.  From a review of this person's time entries, the services performed were consistent with what would have been performed by a competent paralegal.  The timekeeper's Ph.d in Analytical Chemistry did not appear particularly useful in the services provided here in this commercial dispute.

[3]     The hourly timekeeper rates increased approximately 9% over the period of the four phases.

The Court thus uses Defendant's lawyers' hourly rates in its review of Defendant's attorneys' fees and expenses reimbursement request.

    2.  <u>Phase One</u>

This period, which Defendant describes as January 20, 2012, to March 27, 2012, represents the early stages of the federal litigation. The attorneys' fees for which Defendant seeks reimbursement involve three activities that occurred during this phase:

1. To prepare and file the Certificate of Interested Persons and the Corporate Disclosure Statement required by the Court;
2. To prepare and file Defendant's Motion to Dismiss and to Transfer Venue (the "Motion"); and
3. To prepare and file the Joint Preliminary Report and Discovery Plan, also required by the Court.

Defendant contends these requirements are not ones that are imposed in state court litigation. It thus argues the fees for these submissions were unique to this federal action. Plaintiff contends that state courts may require filings similar to those described in subsections (a) and (c) above and provides examples of orders that impose similar submissions in a case litigated in the Fulton County Superior Court. Plaintiff does not cite a uniform State rule, like those that apply in this Court, that imposes these same obligations in state cases. Plaintiff's objection to the subsection (a) and (c) activities is not persuasive. Defendant incurred the expenses associated with these activities and there is no persuasive authority that

7

these requirements routinely are imposed in a state court proceeding.  They thus qualify for reimbursement because they are within the scope of allowable reimbursable expenses.

Plaintiff next objects to reimbursement of fees and expenses incurred to prosecute the Motion.  Plaintiff acknowledges there is no state court counterpart to a motion for change of venue but argues that reimbursement is not reasonable here because the Motion was denied.  The standard here, however, is not whether Defendant was a prevailing party, but whether the attorney's fees were incurred because the case was litigated in federal court.  Plaintiff essentially acknowledges the Motion was one that would not be filed in state court and it does not contend the Motion was frivolous.  This activity falls within the scope of allowable attorneys' fees for which reimbursement is allowed.

Plaintiff next objects to the attorneys' fees requested because the amount claimed is unreasonable.  Defendant seeks attorneys' fees for Phase 1 activities in the aggregate amount of $39,203.50 which constitutes fees claimed by the Faegre Baker Daniels firm in Minneapolis ("Lead Counsel") in the amount of $31,351.50 and by Kilpatrick Stockton's Atlanta office ("Local Counsel") in the amount of $7,852.00.  Plaintiff claims there was redundancy and inefficiencies in the

provision of these legal services that unreasonably increased the attorneys' fees claimed.

Defendant acknowledges that blocks of billing entries included reimbursable and nonreimbursable time, and sought to identify the time in an individual entry that included reimbursable services and applied the applicable billing rate only to the services for which attorneys' fees reimbursement is allowed.  The Court recognizes the good faith effort Defendant made to identify only time it believed was reimbursable.  The Court, however, reviewed the time incurred by counsel during this phase and itself determined if there were inefficiencies and duplication of services during this phase.  Defendant has not persuaded the Court that it has accounted for all redundancies and the inherent inefficiencies in counsels' provision of legal services in this matter.  These inefficiencies and redundancies, the Court concludes, are the result of multiple attorneys working on this case by performing various discrete but interrelated functions.  For example, the continuity of the provision of key legal services by Lead Counsel was disrupted by the departure of a key lawyer working on the matter when the lawyer departed the firm for other employment and, upon return, was reassigned to this matter.

The Court also analyzed whether the services performed were assigned to an attorney at the appropriate level of experience and hourly rate.  This is a more

difficult analysis.  Partners are responsible for reviewing and approving the work of lawyers they supervise, but the time and scope of this supervision must be reasonable.  It requires discipline and reasoned restraint.  For example, the Court's review of the legal services performed by the Lead Counsel partner shows the services exceeded what was reasonable for this phase.  The Lead Counsel senior partner billed, during Phase 1 alone, more than three times the number of hours the other, lower billing rate partner billed, indicating work was not being assigned at the most appropriate partner level.[4]  It is difficult and time-consuming to identify every inefficiency and redundancy in the legal services performed on a matter to make refined adjustments in the legal services claims.  Our circuit has found that across-the-board reductions of fees is appropriate where, like here, it is difficult to determine the time spent on particular tasks.  Dial HD, Inc. v. ClearOne Commc'ns, 536 F. App'x 927, 931 (11th Cir. 2013).  The Court thus chooses to adjust the attorneys' fees claim for work during this phase by reducing the senior partner's billed time by 40%, and then reducing the total attorneys' fees for this

---

[4]     All the time billed by Local Counsel in this case for which is seeks reimbursement was for services performed by a senior level partner whose billing rate ranged from $540 to $635 per hour during these four phases, and for time billed was by a paralegal.  This evidences a failure to have services performed at a reasonable rate, in this case at the rate of an associate attorney.  This staffing decision resulted in Local Counsel's request, in the initial submission, for reimbursement of attorneys' fees in the amount of $162,031.00.

phase by 10%.  With these adjustments, the Court finds the reasonable attorneys'
fees for Phase 1 to be as follows:  Lead Counsel: $24,131.80 and Local Counsel
$7,066.80, for total reasonable fees of $31,198.60.

### 3.  Phase 2

This phase, which Defendant describes as encompassing the period
March 28, 2012, through July 1, 2013, focused on discovery and other preliminary
processing of the case.  The parties have agreed that the legal services performed
during this phase will be used in the state court litigation and Defendant does not
apply for reimbursement of attorneys' fees for this phase.

### 4.  Phase 3

This phase, which Defendant describes as encompassing the period
July 1, 2013, through June 6, 2014, focused on the processing of Defendant's
summary judgment motion through the time Plaintiff filed its notice of appeal.
There are three activities Defendant claims it performed during this phase which it
would not have incurred, and will not incur, in a state court action.  The three
activities are:

1. Seeking an award of costs under Rule 54 of the Federal Rules of Civil
   Procedure after summary judgment was awarded in Defendant's favor;
2. Preparation of the appendix submitted in support of Defendant's
   summary judgment motion; and
3. Seeking continuing protection of documents in connection with the
   parties' summary judgment briefs.

11

The Court begins by evaluating if these discrete activities are ones which Defendant incurred because this litigation was processed in federal court.  The Court concludes they were.  The application for an award of costs under Rule 54 is a federal procedure.  Even if Defendant were able to apply in state court for the costs it requested in the federal court—the Court is unaware of any authority to do so—the fact is Defendant engaged this federal procedure and incurred costs to do so.  The attorneys' fees billed for this activity is reimbursable.

The summary judgment appendix that was submitted in this case was required by the Court.  Paragraph 15 of the Court's Standing Order Regarding Civil Litigation (the "Standing Order") requires litigants to prepare for the Court an appendix containing the specific record evidence supporting each undisputed fact upon which the litigant relies in seeking summary judgment.  This requirement aids the Court in its timely issuance of orders, especially in fact-intensive cases like the one here.  While other courts may impose a similar requirement, it is not one that is widely imposed.  The appendix requirement is a specific requirement of the Court and there is no evidence that a similar requirement is imposed by Georgia state courts, including the state court that will preside over this matter on remand.  These legal services are within the scope of services for which Defendant may be reimbursed.

The Court's continuing protection process under the Stipulated Protective Order [51] ("Protective Order") also are unique.  The continuing protection requirement derives from the Court's commitment to making the orders it issues available for review and scrutiny by the public.  Scrutiny is impeded by allowing the parties to designate material as confidential which denies public access to evidence including that upon which the Court relies in deciding a motion and issuing an order on it.  The Protective Order contained, as required by paragraph 11 of the Court's Standing Order, the provision that any document, material or other information that is submitted to the Court in support of a pleading and identified as protected under the Protective Order loses its protection if a party does not, within ten (10) days after it is submitted, ask the Court to allow the document, material or information to continue to be protected.  For the Court to review the materials for which continued protection is requested, the party must submit un-redacted forms of the information with a copy showing the redactions proposed.  The submissions must be appropriately tabbed for efficient review by the Court.

Both parties submitted multiple notebooks of material for the Court's review to determine which, if any, of the hundreds of documents submitted would be provided continuing protection.  The material to be reviewed was voluminous and

the expense incurred, by both parties, to provide the information on which continued protection was requested was substantial.[5]  The preparation of these continuing protection materials for review was required by the Court and the Court is certain that a similar requirement does not exist in state litigation.  The attorneys' fees incurred to meet this requirement are reimbursable.

The Court now turns to Plaintiff's general objection to the reasonableness of the attorneys' fees for which Defendant seeks reimbursement for these three Phase 3 activities.  The Court has reviewed the time entries that support Defendant's Phase 3 reimbursement request.  The reimbursement total amount requested is $176,187.50 (Lead Counsel: $113,102.00; Local Counsel: $63,085.50)  Although the per activity attorneys' fees totals are not provided, the Court's review of all of the Phase 3 time entries shows that the same large firm litigation inefficiencies and redundancies apply here.  The Court concludes that not all assignments were performed at the most cost effective billing level, there was redundancy in the review of work by less senior timekeepers and, overall, the time expended exceeded what was reasonable.  The Court reduces, by 30%, the

---

[5]     Characteristic of this case, the over-designation of material for which protection was requested was troubling and caused the Court to expend significant time and resources to conduct the review required.

attorneys' fees claimed by Lead Counsel and Local Counsel for this phase.[6]  Total reasonable fees are reimbursable to Lead Counsel in the amount of $79,171.40 and total reasonable fees are reimbursable to Local Counsel in the amount of $44,159.85, for total aggregate reimbursable fees for this phase in the amount of $123,331.25.

    5.  Phase 4

This phase, which Defendant describes as encompassing the period June 9, 2014, forward, focused on activities associated with Plaintiff's appeal to the Eleventh Circuit, preparation for the hearings conducted by the Court in response to the Circuit Court's requirement that the Court investigate if there was subject matter jurisdiction in this case, and the preparation and prosecution of

---

[6]     The Court, in determining reasonable fees and expenses in this case considered the opinions offered by Mr. Robbins, Plaintiff's expert, and Mr. Daniels, Defendant's expert.  The information provided by Mr. Daniels and which was presented in Defendant's Reply underscores that even the briefs on this attorneys' fees reimbursement issue is driven by overzealous advocacy.  Reply at 6-7.  In the charts presented on pages 6-7, Defendant compares the attorneys' fees charged to Plaintiff with those which Mr. Robbins claims are reasonable for the tasks billed.  The chart shows that Plaintiff's counsel's attorneys' fees eclipsed the fees that its expert, Mr. Robbins, opined were reasonable.  The Court's function is to determine reasonable attorneys' fees for work performed by competent, experienced counsel in this locality.  While the expert opinions have been somewhat helpful, the Court relies more on its personal practice experience and its review of attorneys' fee requests over the last twelve years in determining the reasonable reimbursable attorneys' fees in this case.  In doing so, the Court has applied its best billing judgment.

Defendant's motion for sanctions.  Plaintiff only argues the services performed in connection with the appeal itself were not unique to this federal proceeding and would have been incurred in a state court case.  Plaintiff misses the point.  Here there was an appeal in a case in which it ultimately was determined that subject matter jurisdiction does not exist.  That there may later be a state appeal of some kind underscores that the time and expense incurred in this appeal resulted solely from Plaintiff's counsel's failure to disclose the citizenship of its client and to repeatedly wrongfully misrepresent there was federal jurisdiction over this matter. All of the appeal expenses are reimbursable.

Defendant seeks attorneys' fees for Phase 4 in the aggregate amount of $529,712.50, which consists of fees claimed by Lead Counsel in the amount of $438,619.00, and fees claimed by Local Counsel in the amount of $91,093.50.  In its Reply, Defendant seeks further fees of $165,021.50, just to prepare the Reply, bringing the total Phase 4 reimbursement request to $694,734.00.  Defendant, in its Reply, does not specify to which firm the $165,021.50 is attributable.  The Court, in reviewing the exhibits attached to the Reply, determined that $39,395.00 is attributable to Lead Counsel, $70,626.50 is attributable to Local Counsel, and $55,000.00 are the fees paid to Defendant's expert Mr. Daniel.  It is not clear which firm engaged Mr. Daniel on behalf of Defendant.  The Court, accordingly,

16

attributes 50% of Mr. Daniel's fee to Lead Counsel and the other 50% to Local Counsel.

Plaintiff's principal objection to the Phase 4 attorneys' fees claimed is that they are unreasonable.  It claims the time spent on these three activity areas exceeded, by at least twice, what would be reasonable to charge for these activities. The Court agrees that the attorneys' fees claimed are, at least facially, unreasonable if not preposterous.  That there was patent redundancy and inefficiency in the services performed during this phase is illustrated by a couple of specific examples.  A review of Mr. Kahnke's time entries shows a patterned use of canned language to describe the activities involved.  These pattern entries are illustrated by the three examples below:

> July 21, 2014:  "Analyze issues and emails regarding 11th Circuit mediation, sanctions motion, strategic options, and next steps.
>
> July 22, 2014:  "Analyze issues, telephone conferences, and email regarding 11th Circuit mediation, potential sanctions motion, strategic options and next steps.
>
> July 23, 2014:  "Analyze issues and emails regarding jurisdiction, potential sanctions motion, strategic options, and next steps."

This rote description is used in some form 40 times in the Phase 4 time entries. Although often tied to particular general issues, this entry language and its rote nature does not provide a sufficient basis for the Court to consider that the time

claimed is accurate or reasonable.  Indeed, it suggests a failure of billing discipline.

Another example of this billing failure is Mr. Kahnke's entries for conferences that

do not have corresponding entries by other timekeepers to support that the

conferences emails referenced in the entries occurred.[7]  The Court notes also that a

key associate took personal time off during this important phase of the litigation,

requiring another associate to assist in this late stage of the case, compounding the

inefficiencies in providing legal services during this time period and inflating the

attorneys' fees charged.

Next, the two evidentiary hearings were overstaffed by Defendant especially

considering the presentations made and Plaintiff's burden to present evidence of

what accounted for the misrepresentations made to the Court.  The hearings, of

course, were serious ones involving lawyer conduct and competency.  The Court

notes further that a second hearing was required because of Plaintiff's shallow and

---

[7]     For example, many of Mr. Kahnke's entries begin with the phrase "[a]nalyze issues, conferences, and emails," including his entries for July 31, 2014 and August 1, 2014.  On these two days, Mr. Kahnke billed time to: "[a]nalyze issues, conferences, and emails regarding third-party document production, potential sanctions motion, strategic options and next steps."  No other timekeepers billed any time that day, suggesting that Mr. Kahnke's rote use of the "[a]nalyze issues, conferences, and emails" does not accurately reflect the tasks he actually performed that day, as no other timekeeper billed any time for "conferences." These repeated failures of billing discipline hinder the Court's efforts to determine what attorneys' fees were reasonably charged and are should be subject to reimbursement.

ambiguous evidence and its general inability to explain various matters about its corporate organization and the manner in which it and its counsel undertook to determine the citizenship of its members.  The first hearing was so unproductive the Court had to order the specific testimony and evidence Plaintiff was required to present so the Court could fulfill the investigation and findings obligation required by the Eleventh Circuit.  If Plaintiff had been properly prepared and its witnesses knowledgeable about the facts and issues that were the focus of the first hearing, a second hearing would not have been required.  Thus, the attorneys' fees and expenses Defendant incurred in connection with the hearings were enhanced as a result of Plaintiff's counsel's conduct and incomplete preparation for the first hearing.

That a second hearing should not have been necessary does not excuse Defendant's decision to increase its fees and expense by having six lawyers at the first hearing and four at the second.  It is this sort of case overstaffing and overkill for which clients and the public criticize the legal profession.

The two examples mentioned above are representative of what the Court found during its review of the Phase 4 fees and expenses and support that the attorneys' fees and expense for this phase are unreasonable, in the extreme.  The Court, having reviewed the Phase 4 time entries, concludes that a 40% reduction in

the attorneys' fees claimed will result in a reasonable fee amount for the legal

services performed.  The Court thus allows reimbursement of attorneys' fees to

Lead Counsel for this phase in the amount of $303,308.40, and attorneys' fees to

Local Counsel in the amount of $113,532.00, for reimbursable attorneys' fees for

this phase in the amount of $416,840.40.

6. Expenses

Defendant seeks reimbursement of six (6) limited costs it would not have

incurred if Plaintiff has accurately represented its citizenship.  There are:

1. The removal filing fee ($350.00);
2. *Pro hac vice* application fees ($1,050.00);
3. Preparation of summary judgment appendix ($4,714.85);
4. Eleventh Circuit admission fees ($1,078.28);
5. Service of documents on PPL in connection with jurisdictional inquiry ($155.84); and
6. Expenses to attend the August 20 and October 22, 2014, evidentiary hearings ($12,533.97).

The Court approves the reimbursement of the removal filing fee, *pro hac vice* application fee and Eleventh Circuit admission fees.  These fees were all

incurred as a result of the asserted federal jurisdiction in this matter.[8]  Plaintiff also

---

[8]    Plaintiff claims that Defendant will incur similar *pro hac vice* fees in state court, emphasizing that these cost would not have been incurred but for Plaintiff's representations.  That *pro hac vice* fees may be incurred also in the state court proceedings supports that those incurred in this case are reimbursable because they were ultimately unnecessary.

asserts that the appendix preparation costs would have been incurred in a state court action.  There is no firm factual basis for this assertion other than had this case been assigned to the Fulton County Business Court, and if the business court required it, this cost may have been incurred in the state court action.  Assuming, however, that Defendant will move for summary judgment in the state court after remand, the Court concludes the appendix will be useful and thus agrees to limit to 50% reimbursement of these requested cost.  The cost for service fees, the basis of which is not articulated in Defendant's submission, is denied reimbursement.

Finally, the Court turns to the matter of travel expense for the evidentiary hearings in Atlanta.  As the Court already has noted, the number of lawyers who attended the hearings from Minnesota was excessive and the Court agrees to reimburse only a portion of the travel expenses claimed.  Travel expenses are reduced by 50%.  Accordingly, the total reasonable expense reimbursement allowed in this case is $11,102.69.

### B.  Exercise of continuing jurisdiction

The Court has discretion to continue to exercise its jurisdiction when the circumstances warrant it.  It is appropriate to retain jurisdiction in a matter to evaluate and make an award of attorneys' fees.  See Thomas v. Early County, Ga., 360 F. App'x 71, 75 (11th Cir. 2010).  Certainly a court can exercise jurisdiction

over collateral matters even after a complaint is dismissed.  See Cooter & Gell

v. Hartmarx Corp., 496 U.S. 384, 395 (1990) (court could award attorneys' fees as

required upon finding of Rule 11 violation even though complaint was dismissed).

Here, Defendant argues that the remanded state court action may be litigated in

such a way that certain of the activities it now expects may be used in the state

court action will not be usable.  Because of these uncertainties, Defendant requests

the Court to maintain jurisdiction over this matter because Defendant believes,

based on uncertain events, that it might be entitled to a further award of attorneys'

fees and expenses.  The Court declines to maintain jurisdiction.

　　　The Court here is awarding attorneys' fee as a sanction for Plaintiff's

counsel's litigation conduct in representing to Defendant's counsel and this Court

that Plaintiff's counsel had properly investigated Plaintiff's citizenship and

determined it was diverse from Defendant.  It was this wrongful representation that

resulted in the Court and Defendant investing an extraordinary amount of time

presiding over this matter only to find that Plaintiff's counsel's citizenship

investigation was not competent and not complete.  The Court concludes that the

award of attorneys' fees and expense made in this Order is a sufficient sanction for

Plaintiff's counsel's conduct and a further award is unnecessary as is the

continuation of the Court's jurisdiction over this matter.

**IV. CONCLUSION**

For the reasons stated above, reasonable attorneys' fees and expenses are awarded as a sanction for Plaintiff's counsel's conduct pursuant to the Court's September 25, 2015, Order. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's counsel shall pay to Defendant the amount of $571,282.40 to compensate Defendant for attorneys' fees for the unnecessary provision of legal services in this action and the amount of $11,102.69 to compensate Defendant for unnecessary expenses incurred, for a total award of attorneys' fees and expenses of $582,385.09.

**SO ORDERED** this 6th day of April, 2016.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE